HELEN M. VEGLIANTE *v.* THE NEW HAVEN CLOCK COMPANY ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, JS.

Argued June 5—decided July 10, 1956

*Alfonse C. Fasano,* for the appellant (plaintiff).

*George R. Tiernan,* with whom was *Martin E. Gormley,* for the appellees (defendants).

DALY, J. The Superior Court dismissed the plaintiff's appeal from a finding and award of the work-

men's compensation commissioner in favor of the defendants, the plaintiff's former employer and its insurer. The plaintiff claimed that under the provisions of the Workmen's Compensation Act the defendants should pay, or reimburse her for the payment of, bills of physicians and hospitals incurred by her for medical attention, medication and treatment for an occupational disease, radium poisoning; that they should provide medical attention for her in the future; and that they should pay her compensation. The defendants claimed that because the plaintiff failed to give written notice of a claim for compensation or to request a hearing, as required by the controlling statute, she is not entitled to compensation, reimbursement for the medical bills paid by her or the payment by the defendants of future medical bills.

The material facts found by the commissioner are as follows: The plaintiff was employed by the named defendant, hereinafter called the defendant, at its plant in New Haven from December 13, 1922, to March 26, 1931. Until some time in October, 1928, she worked in its radium department, painting dials for clocks and watches with a radium powder. Thereafter, she was transferred to other departments and never again, while employed by the defendant, was exposed to radium or radioactive substances. Because of her work with those substances, the plaintiff had, by September, 1928, become radioactive and was suffering from radium poisoning, an occupational disease peculiar to her work. It was due to causes in excess of the ordinary hazards of employment. At about the time she was transferred to another department, she entered the New Haven Hospital, where she was examined and treated by physicians of the hospital and by physicians whom

she understood were employed by the government. Dr. Frederick B. Flinn of Columbia University in New York City was called into consultation. She went, also, to Columbia University and to Dr. Daniel F. Levy, of New Haven, for examinations. She continued under Dr. Levy's treatment, in conjunction with the consultants, for several years. For the first two or three years she received injections every other day. These examinations and treatments and the medical attention were furnished by the defendant at its expense and were necessitated by the occupational disease from which she was suffering. In addition, the defendant sent the plaintiff on a trip to Bermuda and paid for it. In September, 1930, she was found negative for radioactivity, and in 1931 she was pronounced cured.

After terminating her employment with the defendant on March 26, 1931, the plaintiff was employed by another firm until February, 1934. While in its employ, she was not exposed to radium or radioactive substances. Thereafter, she was married and since then has not been regularly employed. She was exposed to radium or radioactive substances only while she was employed by the defendant. The plaintiff submitted no evidence indicating whether or not she was incapacitated for seven or more days from work of all descriptions in the period from September, 1928, through March 26, 1931. It was agreed, however, that she was paid for the time lost from her employment during that period due to the occupational disease. In the fall of 1928, the plaintiff knew that she was suffering from radium poisoning owing to her employment by the defendant. She confirmed this in April, 1929, and again in February, 1930, when she read and copied medical reports made by Dr. Flinn. Although she knew that she was suf-

fering from the occupational disease and that the medical attention furnished by the defendant was necessitated by the disease, she did not, within one year from the date on which she first had that knowledge, file written notice of her claim for compensation with the defendant and the compensation commissioner.

The plaintiff's present difficulty and claim arose in the winter of 1940-1941, when she began to have pain in her left shoulder. In September, 1941, at the expense of the defendant or its insurer, the plaintiff went to Dr. Flinn in New York for another examination. He prescribed a course of treatment for her which brought on malnutrition and had to be discontinued within three weeks. She was then and thereafter treated and examined by many physicians. Dr. Robley D. Evans of Cambridge, Massachusetts, made computations, tests and gamma-ray runs in his laboratory and examined x-rays. He found " a very small amount of radium but . . . that is sufficient to cause body lesions in the course of ten or fifteen years." The difficulty with the plaintiff's left shoulder and arm was causally traceable to the radium poisoning from which she suffered as a result of her employment by the defendant and the residuals thereof. The condition has persisted and increased. She has suffered, also, from some damage to her right jaw. Although there may be some doubt as to whether the extraction of many of her teeth was made necessary by the occupational disease, she has a condition in both shoulders, though more marked in the left shoulder and arm, and in her right jaw which is causally traceable to the effects of the radium poisoning.

The plaintiff did not file with the commissioner a written request for a hearing upon a claim for occu-

pational disease until August 6, 1941. Thereafter, the claim was assigned for a hearing. Various conferences and postponements followed, and the matter was heard by the commissioner on July 30, 1945, and July 16, 1951. On October 6, 1951, the commissioner filed a finding and award dismissing the plaintiff's claim. On October 15, 1951, she appealed to the Superior Court. Thereafter, the parties negotiated for a settlement without success, and on July 13, 1954, filed a stipulation, containing additional testimony of the plaintiff, which was made a part of the record and considered by the commissioner. On August 11, 1954, he confirmed the finding and award filed October 6, 1951. His decision was based upon the plaintiff's failure to file a written notice of her claim for compensation, or a written request for a hearing, within one year after the first manifestation of the disease, or while she was still employed by the defendant or within three years after leaving its employment, as was required by chapter 307, § 5, of the Public Acts of 1927.[1]

---

[1] "Sec. 5. ... No proceedings for compensation ... shall be maintained unless a written notice of claim for compensation shall be made within one year ... from the first manifestation of a symptom of the occupational disease, ... provided no claim for an occupational disease shall be made by an employee ... against the employer in whose employ the disease is claimed to have originated, except while the employee is still in such employ, or within three years after leaving such employ. ... [B]ut if there shall have been a hearing or a written request for a hearing or an assignment for a hearing within one year ... from the first manifestation of a symptom of the occupational disease, ... or in the event that a voluntary agreement shall have been submitted within said period of one year, no want of such notice of claim shall be a bar to the maintenance of proceedings and in no case shall any defect or inaccuracy of such notice of claim be a bar to the maintenance of proceedings unless the employer shall show that he was ignorant of the facts concerning such personal injury and was prejudiced thereby. Upon satisfactory showing of such ignorance and prejudice, the employer shall receive allowance to the extent of such prejudice. ..."

As previously stated, the first manifestation to the plaintiff that she was suffering from radium poisoning, the occupational disease, was in the fall of 1928. She does not claim that she gave written notice or filed a request for a hearing prior to August 6, 1941. She contends that the defendant knew of her condition between 1928 and the date in 1931 when she was pronounced "cured" and that the statute requiring notice was suspended until 1941, when she learned that she was then suffering from the occupational disease. She claims, also, that since the commissioner did not find that she had been incapacitated between 1928 and 1931 for a period of more than seven days, she had not then suffered a compensable injury. General Statutes, Rev. 1918, § 5348, as amended, Public Acts 1919, c. 142, § 5; Public Acts 1929, c. 242, § 1. She further maintains that, since written notice was required only for a compensable injury and she had not sustained such an injury, she was not required to give notice of her claim for compensation within the period of time prescribed by the statute.

When the plaintiff left the employ of the defendant on March 26, 1931, the pertinent provisions of § 5 of chapter 307 of the 1927 Public Acts were contained in § 5245 of the Revision of 1930. In *Rossi* v. *Thomas F. Jackson Co.*, 120 Conn. 456, 181 A. 539, we discussed the case of *Bremner* v. *Marc Eidlitz & Son, Inc.*, 118 Conn. 666, 174 A. 172. We said (p. 462): "That case unlike the present one was controlled by General Statutes, Rev. 1930, § 5245, which provided that the limitation of one year should run from 'the date of the accident or from the first manifestation of a symptom of the occupational disease, as the case may be, which caused the personal injury,' and we held that the word 'manifestation' as

there used was intended to refer to the time when the symptom plainly appeared and not when it was merely doubtful or uncertain, and that not only must the symptom itself plainly appear but it must be recognizable by the claimant himself as a reasonable man or by some one whose knowledge could be imputed to him, as a symptom of the occupational disease from which he was suffering. Under such an interpretation of that statute, a notice given more than one year from the date of the 'accident' might suffice, provided it met a further limitation which appears in that statute to the effect that no claim because of an occupational disease could be made except the employee be still in the employ of the employer or 'within three years after leaving such employ.' "

In 1935, § 5245 was amended by § 1613c of the 1935 Cumulative Supplement. By the amendment, the statute provided that "if within said period of one year an employee shall have been furnished, for the injury with respect to which compensation is claimed, with medical or surgical care as provided in section 5232 [Rev. 1930] no want of . . . notice of claim shall be a bar to the maintenance of proceedings." In *Gesmundo* v. *Bush,* 133 Conn. 607, 53 A.2d 392, we said (p. 611): "Written notice of the injury within one year is necessary to give the commissioner jurisdiction to hear the claim unless the case falls within one of the exceptions stated in the statute. General Statutes, Cum. Sup. 1935, § 1613c; *Walsh* v. *Waldron & Sons,* 112 Conn. 579, 584, 153 A. 298. No written notice was given in this case and the plaintiff claims under the exception which reads: '. . . if within said period of one year an employee shall have been furnished, for the injury with respect to which compensation is claimed, with medical or surgical care

as provided in section 5232 [Rev. 1930], no want of such notice of claim shall be a bar to the maintenance of proceedings. . . .' . . . [p. 612] The purpose of the notice is to inform the employer that an injury has been suffered upon which a claim for compensation will or may be founded. . . . The exception is, no doubt, based upon the fact that if the employer furnishes medical treatment he must know that an injury has been suffered which at least may be the basis of such a claim." In that case, however, the provision in question was in effect when the plaintiff was injured. In the present case, the amendment contained in § 1613c did not become effective until nearly seven years after the symptoms of the disease first were manifest. Since the amendment applied only in cases which arose from and after its enactment, it furnishes no aid to the plaintiff. Her rights had already expired under the old law, which governed her contract of employment. *Rossi* v. *Thomas F. Jackson Co.,* 120 Conn. 456, 463, 181 A. 539. Likewise, no other amendment to the compensation act effective more than three years after she left the defendant's employ can help her.

As stated above, on August 6, 1941, the plaintiff filed with the commissioner a written request for a hearing upon a claim for the occupational disease, and, thereafter, in September, 1941, the defendant again sent her to Dr. Flinn, who examined her and prescribed a course of treatment for her. This calls for consideration of the question whether the providing of medical attention by the defendant in 1941, approximately ten years after the plaintiff had left its employ, gives any support to her claim that the operation of the statute was suspended between 1931 and 1941. The relation of the parties was contractual, and their respective rights and obliga-

tions arose from the terms of their contract. The provisions of the compensation act, by the presumed acceptance thereof by the parties, became part of the contract. *Walsh* v. *A. Waldron & Sons,* 112 Conn. 579, 582, 153 A. 298. "[T]he requirement of a written notice of claim for compensation is of the essence of the employee's right under the Act and a failure to comply with it cannot be waived or avoided upon equitable grounds." *Rehtarchik* v. *Hoyt-Messinger Corporation,* 118 Conn. 315, 319, 172 A. 353. This requirement was not simply a statute of limitations. *Walsh* v. *A. Waldron & Sons,* supra, 585. The controlling statute specifically forbade the maintenance of proceedings before the commissioner, with certain exceptions, unless the statutory notice of claim for compensation had been given, and the giving of this notice, and the time within which it must be given, became jurisdictional requirements. "Not being merely a procedural matter, the doctrine of waiver . . . cannot avail, since jurisdiction cannot be waived, nor can it be conferred by agreement." *Walsh* v. *A. Waldron & Sons,* supra, 584. The providing of medical attention by the defendant in September, 1941, could not and did not waive the requirement of a written notice of claim for compensation and gave no support to the plaintiff's contention that the operation of the statute was suspended.

The plaintiff claims that even if her failure to comply with the statutory requirement of written notice of claim does bar her claim for compensation she is, nevertheless, entitled to reimbursement for the medical expenses since August, 1941, and relief from paying for future medical expenses connected with the occupational disease. Section 5 of chapter 307 of the 1927 Public Acts, in effect at the time of

the first manifestation to her of a symptom of the occupational disease, provided that "no claim for an occupational disease shall be made by an employee . . . against the employer in whose employ the disease is claimed to have originated, except while the employee is still in such employ, or within three years after leaving such employ." This portion of the statute applied to any claim made by an employee under the compensation act "for an occupational disease," whether for compensation or for medical expenses. The plaintiff made no claim while she was in the defendant's employ or within three years after leaving it. The recovery of medical expenses in a workmen's compensation case must be based on a compensable injury. *Owsiejko* v. *American Hardware Corporation*, 137 Conn. 185, 188, 75 A.2d 404. "Since we are thus dealing with statutory requirements which are imperative and jurisdictional in character, the equitable considerations in this case, though strong, do not permit us to vary or change the requirements. . . . The legislative will as expressed in the Compensation Act, is conclusive upon this court and gives us no alternative but to hold that the commissioner was without jurisdiction in the premises." *Walsh* v. *A. Waldron & Sons,* 112 Conn. 579, 585, 153 A. 298; *Gavigan* v. *Visiting Nurses Assn.,* 125 Conn. 290, 292, 4 A.2d 923. The commissioner and the court did not err in concluding that the plaintiff was not entitled under the compensation act to compensation or payment of past or future medical expenses since the requirements of the controlling statute were not complied with.

There is no error.

In this opinion the other judges concurred.