## CARL RICE *v.* VERMILYN BROWN, INC., ET AL.
## (15123)

PETERS, C. J., and BORDEN, BERDON, NORCOTT and PALMER, Js.

Argued January 5—decision released May 2, 1995

*Matthew Shafner*, with whom, on the brief, was *Mark W. Oberlatz*, for the appellant (plaintiff).

*Robert S. Cullen*, for the appellee (named defendant).

*Jane R. Rosenberg*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *William J. McCullough, Michael J. Belzer, Michelle D. Truglia* and *Lisa Kahn*, assistant attorneys general, for the appellee (defendant second injury fund).

PALMER, J. The dispositive issue raised by this appeal is whether General Statutes (Cum. Sup. 1939) § 1330e[1] bars the workers' compensation claim of the decedent, Carl Rice (claimant), against the named defendant, Ver-

---

[1] General Statutes (Cum. Sup. 1939) § 1330e provided in relevant part: "(a) The first sentence of section 1613c is amended to read as follows: No proceedings for compensation under the provisions of [the Workers' Compensation Act] shall be maintained unless a written notice of claim for compensation shall be given within one year from the date of the accident or from the first manifestation of a symptom of the occupational disease, as the case may be, which caused the personal injury . . . provided no claim on account of an occupational disease shall be made by an employee or his dependents against the employer in whose employ the disease is claimed to have originated, except while the employee is still in such employ, or within five years after his leaving such employ. . . ."

Section 1330e was amended in 1959, at which time the prohibition against compensation claims filed more than five years after the termination of employment was eliminated. Public Acts 1959, No. 580, § 8, codified at General Statutes (1959 Sup.) § 31-168. In 1980, the legislature further amended the Workers' Compensation Act to extend the period for the filing of a claim due to an occupational disease from one year after the first manifestation of a symptom of the disease to three years thereafter. Public Acts 1980, No. 80-124, § 5, codified at General Statutes (Rev. to 1981) § 31-294; see footnote 8.

milyn Brown, Inc. (Vermilyn Brown).[2] The compensation commissioner (commissioner) concluded that the claimant was entitled to certain benefits under the Workers' Compensation Act (act)[3] for an occupational disease caused by his exposure to asbestos in 1942 during the course of his employment with Vermilyn Brown. On appeal, the compensation review board (review board) reversed the finding and award of the commissioner, concluding that the claimant's receipt of benefits was barred by § 1330e. Angela J. Rice, executrix of the claimant's estate, appealed from the decision of the review board to this court.[4] We affirm the decision of the review board.

The commissioner found the following facts.[5] The claimant was employed as a carpenter by Vermilyn Brown for several months in 1942.[6] While so employed,

---

[2] The Second Injury Fund and Travelers Insurance Company are also defendants.

[3] The Workers' Compensation Act can be found at General Statutes §§ 31-275 through 31-355a.

[4] The claimant died prior to the decision of the review board, and the original appeal from that decision was taken by the claimant's attorney in the claimant's name. Because an attorney may not prosecute an appeal on behalf of a decedent; see Hennessy v. Denihan, 110 Conn. 646, 649, 149 A. 250 (1930); the motion of the Second Injury Fund to dismiss the appeal without prejudice to the right of the executrix of the claimant's estate to file an appeal on behalf of the estate was granted; see General Statutes § 52-599; see also Worden v. Francis, 170 Conn. 186, 188, 365 A.2d 1205 (1976); Clemens v. Harris, 120 Conn. 111, 113, 179 A. 334 (1935). This appeal by the executrix followed. References to the plaintiff are to Angela Rice in her capacity as executrix.

[5] The defendants, in their appeal to the review board, raised objections to certain of the commissioner's factual findings. Because the review board concluded that the claimant's application for benefits was barred by § 1330e, the board did not reach the defendants' claims concerning the commissioner's factual findings and, therefore, those claims are not the subject of this appeal. For the purposes of this appeal, we assume without deciding that the commissioner's factual findings are supported by the record. See Adzima v. UAC/Norden Division, 177 Conn. 107, 117–18, 411 A.2d 924 (1979).

[6] In 1942, coverage under the act was available at the option of the parties to the employment contract. General Statutes (1930 Rev.) § 5227.

he frequently was required to cut and install sheets of asbestos, resulting in his inhalation of asbestos particles. Although the claimant continued to work as a carpenter until his retirement in 1981, his only significant exposure to asbestos occurred in 1942 during the months that he was employed by Vermilyn Brown.

In December, 1986, the claimant, after experiencing difficulty breathing, consulted with Robert Keltner, a physician specializing in pulmonary medicine. Keltner diagnosed the claimant as suffering from chronic obstructive pulmonary disease with mild asbestosis, and concluded that the condition had been caused by the claimant's exposure to asbestos in 1942. Keltner also concluded that the claimant's pulmonary disease had resulted in a 25 percent permanent loss of the use of his lungs. Thereafter, Keltner determined that the claimant had become totally disabled as of January, 1989, by which date he was suffering from a 50 percent permanent disability of the lungs.[7]

On November 27, 1989, the claimant filed a claim under the act for benefits on account of his lung condition. The commissioner found that the claimant suffered from an occupational disease resulting from his exposure to asbestos in 1942 during the course of his employment with Vermilyn Brown. The commissioner further found that the claimant had suffered a 25 percent permanent disability of the lungs as of

---

Because the claimant and Vermilyn Brown opted for coverage under the act, its "terms . . . [were] incorporated into the contract of employment, [and] the rights and obligations of the parties were defined by that Act." *Walsh* v. *A. Waldron & Sons*, 112 Conn. 579, 583, 153 A. 298 (1931); see also *Chieppo* v. *Robert E. McMichael, Inc.*, 169 Conn. 646, 649, 363 A.2d 1085 (1975); *Vegliante* v. *New Haven Clock Co.*, 143 Conn. 571, 579–80, 124 A.2d 526 (1956).

[7] A second physician, Eric Gluc, also a pulmonary specialist, concurred that the claimant's asbestosis and obstructive lung disease had resulted in a moderate to severe lung impairment.

December 12, 1986, and that the claimant's permanent lung disability had increased to 50 percent by January 1, 1989.

The defendants contested the claimant's eligibility for benefits on, inter alia, the ground that his compensation claim was barred by § 1330e, which required him to have filed the claim within five years from the termination of his employment with Vermilyn Brown. The commissioner rejected this argument, concluding instead that the claim was governed by the limitation period set forth in General Statutes (Rev. to 1985) § 31-294,[8] the pertinent provision of the act in force on December 12, 1986, when the claimant's lung disease first was diagnosed. The commissioner also concluded that the claimant had suffered a compensable injury on that date, and that he had filed his compensation claim within three years thereafter as required by § 31-294. On the basis of these findings, the commissioner awarded the claimant partial disability payments of $28.46 per week commencing on December 12, 1986, such payments to continue for a period of 87.5 weeks, and total disability payments of $28.46 per week commencing on January 1, 1989, such payments to continue for as long as the claimant remained totally disabled.[9]

---

[8] General Statutes (Rev. to 1985) § 31-294 provided in relevant part: "NOTICE OF INJURY AND OF CLAIM FOR COMPENSATION. (a) . . . . No proceedings for compensation under the provisions of [the Workers' Compensation Act] shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident or within three years from the first manifestation of a symptom of the occupational disease, as the case may be, which caused the personal injury . . . .

"(b) . . . . For the purposes of this section, 'manifestation of a symptom' means its manifestation to the employee claiming compensation, or to some other person standing in such relation to him that the knowledge of such a person would be imputed to him, in such manner as is or ought to be recognized by him as symptomatic of the occupational disease for which compensation is claimed. . . ."

Section 31-294 was amended in 1991 by No. 91-32 of the 1991 Public Acts, and recodified at General Statutes (Rev. to 1993) § 31-294c.

[9] The commissioner calculated the claimant's benefits on the basis of his average weekly wage while employed by Vermilyn Brown in 1942. The

The defendants appealed to the review board from the commissioner's finding and award. The defendants claimed, inter alia, that the rights and obligations of the parties were governed by § 1330e and that the claimant therefore was not entitled to compensation because his claim had not been filed within five years from the last date of his employment with Vermilyn Brown. The review board agreed with the defendants that the claim was barred by § 1330e and, accordingly, reversed the decision of the commissioner and dismissed the claim for workers' compensation benefits.[10] This appeal followed.

The plaintiff contends that the claimant's workers' compensation claim is governed by § 31-294 rather than by § 1330e[11] and, consequently, that the review board incorrectly determined that the claim was not timely filed. The plaintiff posits two alternative bases to support her argument: first, that § 31-294 applies retroactively to the contract of employment between the claimant and Vermilyn Brown; and second, that even if § 31-294 applies prospectively only, its application is otherwise mandated by the common law rule that

claimant earned $622.52 during his 17.5 weeks of employment with Vermilyn Brown, for an average weekly wage of $35.57. The commissioner concluded that under the applicable provisions of the act the claimant was entitled to compensation at the rate of 80 percent of his average weekly wage and, accordingly, awarded the claimant weekly compensation of $28.46. The commissioner further concluded that the claimant was entitled to payment for certain cost-of-living adjustments and to reimbursement for reasonable medical expenses resulting from his lung ailment.

[10] The claimant also appealed from the commissioner's decision on the ground that his benefits should have been calculated on the basis of his average weekly wage in 1981, when the claimant was last employed, rather than on the basis of his 1942 wages. See *Mulligan* v. *F. S. Electric*, 231 Conn. 529, 651 A.2d 254 (1994). Because the review board determined that § 1330e barred the claimant's receipt of benefits, it did not consider this issue. The review board also declined to reach the other claims raised by the defendants.

[11] The plaintiff concedes that the claimant's workers' compensation claim failed to satisfy the requirements of § 1330e.

the rights and obligations of the parties under the act are determined by the statutory provisions in force on the date of injury. Because we conclude that the claimant's workers' compensation claim is barred by § 1330e, we affirm the decision of the review board.

I

The plaintiff first claims that the legislature intended § 31-294 to apply retroactively. "The rules of statutory construction that govern the applicability of new legislation to preexisting transactions are well established. Our point of departure is General Statutes § 55-3, which states: 'No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have retrospective effect.' The 'obligations' referred to in the statute are those of substantive law. . . . Thus, we have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only. . . . The Legislature only rebuts this presumption when it clearly and unequivocally expresses its intent that the legislation shall apply retrospectively."[12] (Citations omitted; internal quotation marks omitted.) *Darak* v. *Darak*, 210 Conn. 462, 467–68, 556 A.2d 145 (1989); see also *Miano* v. *Thorne*, 218 Conn. 170, 175–76, 588 A.2d 189 (1991).

The plaintiff acknowledges that the limitation period for the filing of claims under the act is a jurisdictional requirement that affects substantive rights. *Vegliante* v. *New Haven Clock Co.*, 143 Conn. 571, 580–81, 124 A.2d 526 (1956); *Walsh* v. *A. Waldron & Sons*, 112 Conn. 579, 583–84, 153 A. 298 (1931); *Schmidt* v. *O. K.*

[12] By contrast, procedural statutes generally are applied retroactively absent a clear expression of legislative intent to the contrary. *Miano* v. *Thorne*, 218 Conn. 170, 175, 588 A.2d 189 (1991); *Darak* v. *Darak*, 210 Conn. 462, 467 n.8, 556 A.2d 145 (1989).

*Baking Co.*, 90 Conn. 217, 220, 96 A. 963 (1916). We presume, therefore, that the legislature intended § 31-294 to have prospective applicability only. *Miano* v. *Thorne*, supra, 218 Conn. 175; *Darak* v. *Darak*, supra, 210 Conn. 467–68. Because there is nothing in the language of § 31-294 to suggest a contrary intent by the legislature, the plaintiff has failed to overcome the presumption against retroactivity. Furthermore, the legislative history of the precursor of § 31-294; see footnote 1; supports the conclusion that the legislature intended the limitation period contained therein to be applied prospectively only.[13] Accordingly, the plaintiff's contention that § 31-294 applies retrospectively is without merit.

## II

The plaintiff also contends that even if § 31-294 is not applied retroactively, the claimant's right to seek compensation benefits nonetheless is governed by § 31-294 under the common law rule that gives effect to the workers' compensation statutes in force on the date of the injury. We conclude that the date of injury rule has no applicability in the circumstances presented by this case.

As the plaintiff correctly asserts, we have adhered to the date of injury rule since 1916 to determine which of two or more successive amendments to the act governs the employment relationship. Under this common law rule, the rights and obligations of the parties are governed by the provisions of the act in effect at the time of the injury. *Civardi* v. *Norwich*, 231 Conn.

---

[13] Representative Robert Satter, in responding to a colleague's question concerning the applicability of the new law during the floor debate in the House of Representatives, stated that "[t]hose cases that have occurred previously would not be covered by this law; the law would become effective on its passage." 8 H.R. Proc., Pt. 12, 1959 Sess., p. 5083; see footnote 17.

287, 293 n.8, 649 A.2d 523 (1994); *Kluttz* v. *Howard*, 228 Conn. 401, 404 n.3, 636 A.2d 816 (1994); *Iacomacci* v. *Trumbull*, 209 Conn. 219, 222–23, 550 A.2d 640 (1988); *Quilty* v. *Connecticut Co.*, 96 Conn. 124, 127, 113 A. 149 (1921); *Schmidt* v. *O. K. Baking Co.*, supra, 90 Conn. 220–21. In cases involving claims for workers' compensation benefits on account of occupational disease, we have stated that the time of the injury is the date on which the claim first becomes compensable. See, e.g., *Rossi* v. *Jackson Co.*, 120 Conn. 456, 460, 181 A. 539 (1935); *Farmer* v. *Bieber-Goodman Corp.*, 118 Conn. 299, 301, 172 A. 95 (1934); *Rousu* v. *Collins Co.*, 114 Conn. 24, 28, 157 A. 264 (1931).

The plaintiff contends that the application of these principles to the present case compels the conclusion that the rights and obligations of the parties are governed by § 31-294, the provision of the act in force on December 12, 1986, when the claimant suffered a compensable injury. The plaintiff further contends that the claimant's workers' compensation claim was timely filed because it was brought within three years from the first manifestation of a symptom of his occupational disease as required by § 31-294. We reject the plaintiff's argument, however, because the date of injury rule has no applicability when the claimant's rights have already expired under the terms of the act that governed the employment relationship.

The plaintiff acknowledges that § 1330e was the relevant provision of the act in force from the inception of the claimant's employment relationship with Vermilyn Brown in 1942, until 1959, when § 1330e was amended. Under § 1330e prior to its amendment, the claimant was required to have filed a workers' compensation claim on account of his job related exposure to asbestos not later than five years from the date that he left the employ of Vermilyn Brown. The parties' employment relationship having terminated in July,

1942, the claimant's right to file a workers' compensation claim for his lung disease expired in July, 1947, twelve years before the legislature amended § 1330e to remove the prohibition against claims brought more than five years from the termination of the employment relationship. Thus, as of July, 1947, there would have been no workers' compensation jurisdiction for any claim by the claimant. Although the plaintiff concedes that the claimant's right to file a claim on account of his occupational disease expired in 1947, she nevertheless contends that the date of injury rule should be applied to revive the claimant's right to seek compensation for his lung ailment. We have never applied the date of injury rule to restore a right that had expired under the applicable provisions of the act, however, and we decline the invitation to do so now.

As we have stated, the purpose of the date of injury rule is to determine which of two or more successive amendments to the act governs the rights and obligations of the parties. *Civardi* v. *Norwich*, supra, 231 Conn. 293 n.8; *Kluttz* v. *Howard*, supra, 228 Conn. 404 n.3; *Iacomacci* v. *Trumbull*, supra, 209 Conn. 222–23. In this case, however, it is undisputed that § 1330e governed the parties' rights and obligations as of July, 1947, when the claimant's right to file a claim under the act expired.[14] The issue of the claimant's right to bring a compensation claim having been resolved decades ago under § 1330e, there remains no choice of law question requiring the application of the date of

[14] The five year limitation period of § 1330e reflected the judgment of the legislature concerning the proper balance between an injured employee's interest in compensation and the employer's interest in a finite period of exposure to compensation claims, including those claims filed on account of occupational disease. *Rossi* v. *Jackson Co.*, supra, 120 Conn. 462–63. Thus, although the legislature was aware that a former employee might not know that he or she was suffering from an occupational disease until more than five years after the termination of the employment relationship, the legislature nonetheless opted to prohibit recovery in such circumstances. Id.

injury rule. The rule has no application when, as here, the parties' rights and obligations have been so finally concluded under the provisions of the act governing the employment relationship that no subsequent amendment without retrospective effect can alter them.[15] See, e.g., *Vegliante* v. *New Haven Clock Co.*, supra, 143 Conn. 579 ("Since the [subsequent] amendment applied only in cases which arose from and after its enactment, it furnishes no aid to the plaintiff. Her rights had already expired under the old law, which governed her contract of employment. . . . Likewise, no other amendment to the compensation act effective more than three years after she left the defendant's employ can help her.");[16] *Rossi* v. *Jackson Co.*, supra, 120 Conn. 463 ("Since [the subsequent] provisions [of the act] only applied in cases which arose from and after their enactment, they furnish no aid to this employee. His rights had already expired under the old law, which was the one governing his contract of employment.");

[15] The dissent's repeated mischaracterization of our holding as creating an exception to the date of injury rule reflects its fundamental misunderstanding of the issue presented by this case. We do not "engraft [a] novel" and "newly crafted" exception onto the date of injury rule, as the dissent asserts. We conclude, rather, that the doctrine is inapplicable because, as we have explained, there is no choice of law issue to be resolved: the claimant's right to bring a claim expired in 1947 under the five year limitation period of § 1330e, the concededly applicable amendment to the act, long before the legislature, in 1959, prospectively eliminated the five year filing requirement. For this reason, the dissent can cite to no authority to support its proposition that the choice of law principle embodied in the common law date of injury rule may be applied to revive a claim that has already expired under the applicable amendment to the act.

[16] The 1959 amendment to § 1330e eliminating the proscription against claims not filed within five years from the termination of the employment relationship was a direct response to our decision in *Vegliante* v. *New Haven Clock Co.*, supra, 143 Conn. 579, wherein we concluded that the right of the plaintiff to file a workers' compensation claim on account of her occupational disease had expired under the precursor of § 1330e, which barred claims brought more than three years after the termination of the employment relationship. 8 H.R. Proc., Pt. 12, 1959 Sess., pp. 5079–83; see footnote 18.

*Schmidt* v. *O. K. Baking Co.*, supra, 90 Conn. 221 ("Whatever inchoate right, arising from his injuries, [the claimant] may have lost by noncompliance with the conditions precedent to a definite and enforceable claim, was then lost. Whatever that loss was, it could not be restored to him by subsequent legislation.").

Although the legislature effected a policy change in 1959 when it amended § 1330e to eliminate the bar against claims filed more than five years after the termination of the employment relationship, we have concluded that the legislature intended that change to have prospective applicability only. See part I. Moreover, the legislative history of the 1959 amendment indicates that the legislature, in removing the prohibition against claims not filed within five years of the last date of employment, did not intend to revive claims that had already expired under § 1330e.[17] Thus, application of

---

[17] Although not a model of clarity, the pertinent legislative history supports the conclusion that the legislature did not intend its elimination of the five year limitation period to have retroactive effect. Representative Michael J. Vernovai, who opened the debate on the amendment removing the five year limitation period, stated as follows: "Finally the bill changes the [statute] of limitations to prevent people from being barred from obtaining benefits because they discovered their conditions too late to be able to make claims. The law as proposed would permit notice being filed within a year of the date of injury or disability; it provides that the present [five year] statute [of limitations] be eliminated; that prevented workers from making [a] claim after they had been out of the employ of an employer against whom they claimed more than [five years]. This prevented people at the [New Haven Clock Company] from obtaining benefits for [radium] poisoning. It prevented claims for [radium] poisoning and it might prevent claims for . . . other diseases the manifestation of which comes some [years] after exposure." 8 H.R. Proc., Pt. 12, 1959 Sess., pp. 5079–80.

The following colloquy then transpired between Representatives J. McCullough Turner and Robert Satter:

"[Representative] Turner: Would this [bill] cover a case of radiation illness? [Representative Vernovai] referred to radiation poisoning among workers in the [New Haven Clock Company] and I know well this is a latent disease which doesn't develop until up to [twenty-five years] after exposure. Would this bill cover those persons?

"[Representative] Satter: Under the present law those people who received that illness in the [New Haven Clock Company] would not be com-

the date of injury rule to revive the claimant's right to file a claim would nullify the five year limitation period of § 1330e, thereby altering the settled rights and obligations of the parties, contrary to the intent of the legislature.[18] See *Miller* v. *Kirshner*, 225 Conn. 185, 203–204, 621 A.2d 1326 (1993); *Moore* v. *McNamara*, 201 Conn. 16, 22, 513 A.2d 660 (1986); *Lavieri* v. *Ulysses*, 149 Conn. 396, 401–402, 180 A.2d 632 (1962).

We need not, and do not, reject the date of injury rule as it has been applied since 1916 to determine the rights and obligations of the parties under the act. We conclude, however, that the date of injury rule has no applicability under the facts of this case, in which the

---

pensated; the present bill would enable them to be compensated, because the statute of limitation[s] doesn't start until there is a manifestation of the symptoms.

"[Representative] Turner: [Representative Satter], a technicality. I would like to be assured that this bill before us would cover those cases.

"[Representative] Satter: Those cases that have occurred previously would not be covered by this law; the law would become effective on its passage."

In the case referred to during the floor debate, *Vegliante* v. *New Haven Clock Co.*, supra, 143 Conn. 577–79, the claimant's right to seek compensation benefits had expired both because her claim had not been filed within one year of the date that she became aware of her illness *and* because she had not filed her claim within three years from the date she left the employ of the New Haven Clock Company. The legislature, however, was concerned only with the latter bar to recovery and, consequently, the debate focused entirely upon the elimination of that provision. In amending the act to eliminate the five year limitation period for the filing of claims, the legislature, as Representative Satter indicated, intended the amendment to apply only to those compensation claims that, unlike the claim in *Vegliante*, had not expired under the prior law.

[18] The plaintiff suggests that because the legislature is presumed to have been aware of the date of injury rule; see *Iacomacci* v. *Trumbull*, supra, 209 Conn. 221–23; application of the rule to revive the claimant's right to file a claim would not be inconsistent with the intent of the legislature. As we have discussed, however, the date of injury rule is inapplicable in circumstances where, as here, there is no choice of laws issue to be decided. Thus, a presumption that the legislature was aware of the rule provides no support for the plaintiff's argument.

claimant's right to seek compensation already expired under the provisions of the act governing the employment relationship. Accordingly, the review board properly determined that the claimant's workers' compensation claim, filed more than forty years after his right to seek compensation benefits had expired under § 1330e, was time barred.

The decision of the review board is affirmed.

In this opinion PETERS, C. J., and BORDEN and NOR-COTT, Js., concurred.

BERDON, J., dissenting. For more than three quarters of a century, Connecticut law has been clear that the workers' compensation statute in effect on the date of an employee's injury[1] governs that employee's workers' compensation claim. "This date of injury rule was first referred to in 1916, in *Schmidt* v. *O. K. Baking Co.*, 90 Conn. 217, 220–21, 96 A. 963 (1916). In 1921, we stated that '[t]he obligations of the employer to dependents of an employee in case of the death of an injured employee are . . . fixed and determined by the statute in force *at the time of injury.*' (Emphasis added.) *Quilty* v. *Connecticut Co.*, 96 Conn. 124, 127, 113 A. 149 (1921)." *Iacomacci* v. *Trumbull*, 209 Conn. 219, 222, 550 A.2d 640 (1988). The majority, however, now layers an exception on this longstanding date of injury rule. According to the majority, the date of injury rule does not apply if (1) the statute "governing the employment relationship" provided that the employee must file a claim for injury within a specified time, and (2) that claim period has expired.

[1] The date of an employee's injury "is not the time of the accident or occurrence causing injury, but the time . . . when the right to compensation accrues." *Esposito* v. *Marlin-Rockwell Corp.*, 96 Conn. 414, 418–19, 114 A. 92 (1921). In other words, the date of injury refers to the date of the first manifestation of the occupational disease. *Vegliante* v. *New Haven Clock Co.*, 143 Conn. 571, 580–81, 124 A.2d 526 (1956).

For several reasons, I disagree with the majority's decision to engraft this novel exception onto what has been an unquestioned substantive rule of law in Connecticut for seventy-nine years. First, the position taken by the majority is inconsistent with the important policy considerations underlying the Workers' Compensation Act (act). Second, the majority's recognition of this exception is based upon a faulty interpretation of our case law and the legislature's intent. Finally, this exception results in an anachronistic approach to the law.

I

It is beyond dispute that our act is remedial in nature and must be broadly construed to accomplish its humanitarian purposes. *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 341, 612 A.2d 1203 (1992); *Dubois* v. *General Dynamics Corp.*, 222 Conn. 62, 67, 607 A.2d 431 (1992); *Hansen* v. *Gordon*, 221 Conn. 29, 32, 602 A.2d 560 (1992); *Ash* v. *New Milford*, 207 Conn. 665, 672, 541 A.2d 1233 (1988). Moreover, "[b]ecause the [a]ct is a remedial statute, this court should not impose limitations on the benefits provided for a disabled worker that the statute itself does not clearly specify." *Misenti* v. *International Silver Co.*, 215 Conn. 206, 210, 575 A.2d 690 (1990). The position taken by the majority, however, seems to disregard these considerations.

In this case, no one disputes the workers' compensation commissioner's finding that Carl Rice, the claimant, suffered "from an occupational disease which was caused by his exposure to asbestos" in 1942 while he was employed by the named defendant, Vermilyn Brown, Inc. Furthermore, no one disputes that the claimant's occupational disease first manifested itself and became compensable in 1986, and that he gave timely notice of the occupational disease to his employer in accordance with General Statutes (Rev. to 1985)

§ 31-294, the statute then in effect. Applying its newly discovered date of injury exception to the facts of this case, however, the majority concludes that the estate of the claimant and his widow are ineligible for workers' compensation benefits. According to the majority, the claimant's right to file a workers' compensation claim expired in 1947, thirty-nine years before he even discovered he suffered from the disease. Such a conclusion clearly does not comport with the humanitarian purposes underlying the act.

## II

Aside from policy considerations, the assumptions upon which the majority has based its date of injury exception are flawed. The majority relies primarily on certain case law and an interpretation of legislative history for its conclusion that the date of injury rule "has no application when, as here, the parties' rights and obligations have been so finally concluded under the provisions of the act governing the employment relationship that no subsequent amendment without retrospective effect can alter them." Neither of these sources, however, provides support for the majority's position.[2]

## A

The majority purports to rely on three early cases of this court for its decision to recognize an exception

[2] Moreover, the majority does not attempt to explain which of several workers' compensation statutes and amendments—which may contain slightly different limitation periods during which notice to the employer must be provided or claims must be brought—in effect during a person's lengthy period of employment "governs the employment relationship." The majority, for example, does not explain whether a statute in effect on the first day of employment "governs" the relationship, whether the statute in effect for the majority of the relationship "governs," or whether the statute in effect on the last day of employment "governs." Indeed, it is precisely to eliminate such distinctions that the date of injury rule exists. By looking simply to the statute in effect on the employee's date of injury, we eliminate the task of picking and choosing among several potentially applicable statutes.

to the date of injury rule. Far from providing support for the majority's newly crafted exception, however, these cases in fact represent pure judicial applications of the date of injury rule.

In *Vegliante* v. *New Haven Clock Co.*, 143 Conn. 571, 579-80, 124 A.2d 526 (1956), the plaintiff was a former employee of the New Haven Clock Company. Between 1922 and 1928, her job at the factory consisted of painting clock dials with radium, a radioactive substance. Id., 573. "In the fall of 1928, the plaintiff knew that she was suffering from radium poisoning owing to her employment by the defendant." Id., 574. She received medical care for her condition in 1928 and left the company in 1931. Id. Thus, the date of injury for her occupational disease was 1928. She did not file a claim against her employer, however, until 1941, when symptoms of the disease reappeared. Id., 575-76. The workers' compensation commissioner denied her claim on the basis that she had failed to file a written notice of claim within one year after the first manifestation of the disease or within three years after leaving her employment, as required by the statute in effect in 1928.[3] Id., 576.

The plaintiff appealed to this court, arguing that the commissioner, who heard her claim in 1941, should have disregarded the law in effect in 1928 and instead should have applied the law in effect in 1941.[4] Id., 578-79. This

[3] The statute provided that "no claim for an occupational disease shall be made by an employee . . . against an employer in whose employ the disease is claimed to have originated, except while the employee is still in such employ, or within three years after leaving such employ." General Statutes (1918 Rev.) § 5360, as amended by Public Acts 1921, c. 306, § 8, and by Public Acts 1927, c. 307, § 5.

[4] The statute in effect in 1941 provided that the one year notice requirement would not be a bar to recovery "if within said period of one year an employee shall have been furnished, for the injury with respect to which compensation is claimed, with medical or surgical care . . . ." General Statutes (Cum Sup. 1935) § 1613c. Because the plaintiff had received treatment for her condition in 1928, the year she discovered the disease, she argued that this provision applied to her.

court, however, rejected her argument. "In the present case, the amendment . . . did not become effective until nearly seven years after the symptoms of the disease first were manifest." Id., 579. Concluding that the law in effect on the date of her injury governed her claim, this court affirmed the commissioner's decision. Thus, contrary to the interpretation of the majority, this court's decision in *Vegliante* v. *New Haven Clock Co.*, supra, 143 Conn. 571, represented a pure and unadulterated application of the date of injury rule to the precise issue presented by this case: the date by which notice was required to be provided to the employer, and the period of limitation on the filing of a claim, were determined by the statute in effect on the date that the injury first became compensable.

This court took the same approach in *Rossi* v. *Jackson Co.*, 120 Conn. 456, 181 A. 539 (1935), the second case relied upon by the majority. In *Rossi*, the plaintiff was employed as a granite cutter. In 1924, he began to have trouble breathing, an ailment several doctors diagnosed, incorrectly as it turned out, as bronchitis and asthma. Id., 459. It was not until 1932, however, that doctors correctly diagnosed him as suffering from the occupational disease pneumoconiosis. Id., 460. The law in effect in 1924 required an injured worker to provide notice to his employer of his compensation claim within one year from the "date of the injury." General Statutes (1918 Rev.) § 5360, as amended by Public Acts 1921, c. 306, § 8. The compensation commissioner, concluding that the date of injury was 1924,[5] therefore denied the plaintiff's claim because he had failed to furnish notice by 1925. On appeal, however, the plaintiff urged this court instead to apply the law in effect in 1932,[6]

---

[5] This court concluded that the commissioner was justified in so finding. *Rossi* v. *Jackson Co.*, supra, 120 Conn. 459–60.

[6] The statute in effect in 1932 provided that the one year period did not start to run until the appearance of "the first manifestation of a symptom of the occupational disease . . . ." General Statutes (1930 Rev.) § 5245.

which this court had interpreted to mean that notice must be provided one year from the time that "a symptom of that disease should plainly appear, not when it was merely suspected or doubtful." *Bremner* v. *Eidlitz & Son, Inc.*, 118 Conn. 666, 669–70, 174 A. 172 (1934). The plaintiff argued, therefore, that because doctors had not discovered his pneumoconiosis until 1932, the *Bremner* rule required the one year period to start running then. *Rossi* v. *Jackson Co.*, supra, 462.

This court rejected the plaintiff's claim, concluding that his claim was governed by the statute in effect in 1924, his date of injury. "A compensable injury having occurred in 1924, the respective rights and obligations of both parties to the contract of employment were fixed and determined by the statutory provisions in force at that time. It was then required by General Statutes, 1918, § 5360, that notice of claim for compensation must be given by the employee within one year from the 'date of [the] injury,' and we have held this term to mean the 'date of the compensable injury' . . . . There was no provision in the statute (§ 5360) to protect the employee under such circumstances by extending the time for filing his claim, for a period of seven years after the one-year period fixed by the statute." Id., 460–61.

Finally, this court took the same approach to the date of injury rule in the third case cited by the majority, *Schmidt* v. *O. K. Baking Co.*, supra, 90 Conn. 217. In that case, the plaintiff was injured on September 15, 1914, while lifting a heavy barrel during the course of his employment. Id., 218–19. He did not serve notice of his injury on the defendant, however, until April 13, 1915. Id., 219. Chapter 138, § 21 of the 1913 Public Acts required an employee to provide notice to his employer of an injury within thirty days. The plaintiff argued, however, that chapter 288 of the 1915 Public Acts, which did not go into effect until May 20, 1915, con-

trolled his claim instead. That act extended the period during which the employee could provide notice to his employer from thirty days to one full year. Public Acts 1915, c. 288, § 13.

This court rejected both his argument and his compensation claim: "The Act of 1913 was in force *when this claimant's injuries were received,* when the thirty days provided by it for notice thereof to be given to his employer had run, when notice was in fact given to his employer, and when the attempt to enforce his claim was begun. Whatever right of compensation he might have had thus became fixed, and the extent of it determined, or, rather, the elements to be considered in its determination became fixed." (Emphasis added.) *Schmidt* v. *O. K. Baking Co.,* supra, 90 Conn. 220–21.

In each of these three cases, therefore, the plaintiff suffered a known and compensable injury that, according to the date of injury rule, triggered the statute or act in effect at that time. The statute or act in effect on the date of injury dictated a period of limitation, which each plaintiff failed to satisfy. Under the circumstances of these three cases, therefore, this court properly applied the date of injury rule to reject their compensation claims, even though the claims would have been enforceable under the law in effect on the date the claims were filed. In the present case, the claimant first suffered a known and compensable injury in 1986, which triggered the statute in effect at that time. That statute required only that a claimant provide notice of claim to the employer "within one year from the date of the accident or within three years from the first manifestation of a symptom of the occupational disease," and did not include any five year period of limitation. General Statutes (Rev. to 1985) § 31-294. For the majority to hold that we must instead look to the statute in effect in 1942, more than forty years

before the claimant's injury became known and compensable, defies our unwavering precedents.

Moreover, the majority's primary justification for its holding—that the decedent's "right to seek compensation already expired" in 1947—suffers from a fatal flaw. It is plain that no employee has a "right" to receive workers' compensation until he or she has suffered a compensable injury. *Rossi* v. *Jackson Co.*, supra, 120 Conn. 460; see *Farrell* v. *L. G. DeFelice & Son, Inc.*, 132 Conn. 81, 89–90, 42 A.2d 697 (1945) ("circumstances of the injury are such that the employee would have a right to recover workmen's compensation"); see also *Balkus* v. *Terry Steam Turbine Co.*, 167 Conn. 170, 180–81, 355 A.2d 227 (1974) ("the employer's obligation to pay compensation became fixed on the date of injury"). To the extent that the claimant possessed a "right" to compensation, therefore, he could not have acquired that right until 1986, when his occupational disease first manifested itself. Thus, it is impossible for the majority to defend its position by arguing that the claimant's right to compensation had "expired" in 1947. At that time, he had no right that could expire.

Finally, the majority's assertions that, in this case, "there is no choice of law issue to be resolved" and "there remains no choice of law question requiring the application of the date of injury rule," reflect a circular approach to this issue. As the majority correctly recognizes, the date of injury rule exists as a means to determine which of two possibly conflicting statutes should apply to an employee's compensation claim. Here, the choice is between two: the 1939 statute, which included a period of limitation, and later statutes, which did not. This case, therefore, presents a classic illustration of the need to apply the date of injury rule. In a flourish of circuitous reasoning, however, the majority turns this rule on its head: The majority first determines that the 1939 statute applies, and then con-

cludes that because the 1939 statute applies, "there is no choice of law" issue in need of the date of injury rule's application. It is the majority, therefore, that suffers from "a fundamental misunderstanding of the issue presented by this case" and of the purposes of the date of injury rule.[7]

## B

The majority also concludes that the legislative history of § 31-294 precludes our application of the date of injury rule in this case. In reaching this conclusion, the majority disregards our longstanding rules of statutory construction, and, indeed, misinterprets the very legislative history upon which it relies.

When the legislature amended the workers' compensation statute in 1959 to eliminate the statutory requirement that an employee bring a workers' compensation claim against his employer "within five years after his leaving such employ"; General Statutes (Cum. Sup. 1939) § 1330e; the date of injury rule had already been the law in Connecticut for forty-three years. We may presume that the legislature was mindful of this judicial construction and knew of its practical effects. *Murach* v. *Planning & Zoning Commission*, 196 Conn. 192, 200 n.14, 491 A.2d 1058 (1985). We must conclude, therefore, that the legislature realized and intended that the amended statute, § 31-294, which did not

---

[7] Furthermore, I do not understand the basis for the majority's contention that it is not carving an exception into the date of injury rule. The majority, as I have pointed out, acknowledges that the date of injury rule is a means to determine which of two possibly conflicting statutes should apply to an employee's compensation claim. Indeed, we have applied this rule for this purpose since 1916. Logic and consistency of our decisions dictate that we should follow this approach in this case as well. The majority's refusal to do so, therefore, is quite accurately captioned as an exception to the rule. Moreover, the majority cites no case of this court or of any other court as direct support for its proposition that the date of injury rule "has no applicability" when the statute "governing the employment relationship" contains a period of limitation and that period has expired.

include the five year limitation, would apply to any injury arising in the future. We similarly must conclude that if the legislature did not intend the 1959 amendment so to apply, it would have made this intention clear in explicit terms.

Indeed, this court made exactly this point in *Iacomacci* v. *Trumbull*, supra, 209 Conn. 223, when it applied this rule of construction to *restrict* the right of the worker's dependents to workers' compensation benefits. In *Iacomacci*, the plaintiff's husband had suffered a heart attack in 1974 as the result of a compensable injury. Id., 221. At the time of this injury, the workers' compensation statute provided that if death later resulted from the injury, no death benefits would be awarded until a "waiting period" had passed.[8] The legislature repealed this provision in 1978, and the plaintiff's husband died in 1981. The plaintiff argued that the legislature's repeal of the waiting period should be deemed "to apply to all future surviving dependents without regard to the date of injury which brought them within the scope of the Workers' Compensation Act." Id.

This court rejected the plaintiff's claim, concluding "that the legislature intended that the applicability of the 1978 revisions was to be controlled by the traditional date of injury rule, thereby requiring that claims arising out of injuries occurring prior to October 1, 1978, would be subject to the previously specified reduction in benefits." Id., 224.[9] This same reasoning applies

---

[8] The length of this "waiting period" was equal to the amount of time that the decedent had collected benefits while alive. *Iacomacci* v. *Trumbull*, supra, 209 Conn. 220 n.2.

[9] The court pointed out that the "presumption that the legislature was aware of those tenets is further supported by its passage of two workers' compensation revisions that specifically stated that new benefits were to accrue to previously injured workers." *Iacomacci* v. *Trumbull*, supra, 209 Conn. 223.

to this case, and requires us to apply the law in effect in 1986, when the claimant's occupational injury first manifested itself.

The majority, however, asserts that the legislative history of the 1959 amendment indicates that the legislature intended the change to have prospective effect only, and that the legislature "did not intend to revive claims that had already expired." The majority purportedly bases this conclusion upon the remarks of one legislator, Representative Robert Satter, during debate on the bill in the House of Representatives. The majority not only has misinterpreted Representative Satter's remarks, but also places undue emphasis on them.

First, the majority misconstrues Representative Satter's remarks. The provision of the bill in question was a direct response to the radium poisoning problem addressed by this court in *Vegliante* v. *New Haven Clock Co.*, supra, 143 Conn. 571. As indicated earlier, in *Vegliante*, this court had refused to allow an employee who had contracted radium poisoning while working at the New Haven Clock Company to bring a workers' compensation claim under the act because she had failed to satisfy the three year requirement. It was noted in that case that medical knowledge suggested that the "residuals" of radium poisoning, such as body lesions, could manifest themselves ten to fifteen years after an employee's exposure to the radium. Id., 575. The legislative history clearly shows that the 1959 legislators considering the amendment to the act were deeply concerned about occupational diseases that could lie dormant for years without any overt manifestations.[10]

---

[10] See 8 S. Proc., Pt. 6, 1959 Sess., p. 2816, remarks of Senator Norman A. Buzaid; 8 H.R. Proc., Pt. 12, 1959 Sess., pp. 5079–80, remarks of Representative Michael J. Vernovai, and p. 5083, remarks of Representative J. McCullough Turner; Conn. Joint Standing Committee Hearings, Labor, 1959 Sess., pp. 122–23, testimony of Margaret Driscoll, representing the

During debate on the House floor, legislators expressed concern over which law would govern workers' compensation claims, arising in the future, of workers who had been exposed to radium in the past. Specifically, they wanted to know whether workers who had been exposed to radium prior to 1959, but who had not yet manifested symptoms of the disease, would be covered by the 1959 amendment. The exchange on the House floor, upon which the majority apparently relies, reads as follows:

"[Representative Robert] Satter: I would say that this law consistently provides that any manifestations of an injury which occur sometime later is nevertheless compensable even if it is after the [one year] statute of limitations. . . .

"[Representative J. McCullough] Turner: Would this cover a case of radiation illness? The gentleman from Watertown referred to radiation poisoning among workers in the [New Haven Clock Company] and I know well this is a latent disease which doesn't develop until up to [twenty-five] years after exposure. Would this bill cover those persons?

"[Representative] Satter: Under the present law those people who received that illness in the [New Haven Clock Company] would not be compensated; the present bill would enable them to be compensated, because the statute of limitation doesn't start until there is a manifestation of the symptoms.

"[Representative] Turner: The gentleman from Newington, a technicality. I would like to be assured that this bill before us would cover those cases.

"[Representative] Satter: Those cases that have occurred previously would not be covered by this law; the law would become effective on its passage."

Connecticut State AFL-CIO Council, and p. 169, testimony of M.W. Reid, district vice president of the Connecticut State Chamber of Commerce.

Representative Satter, therefore, correctly informed the House that the New Haven Clock Company workers who had suffered known and compensable injuries prior to 1959 but who had failed to comply with the statutory requirements then in effect would not be able to use the amendment to revive their claims. Representative Satter, however, did *not* say that workers at the clock company who would suffer known and compensable injuries *after* 1959 would similarly be prevented from filing claims. On the contrary, he stated that with respect to clock company workers who had been exposed to radium in the past, when the applicable statute included a period of limitation, but whose occupational disease had not yet manifested itself, the bill *"would enable them to be compensated, because the statute of limitation doesn't start until there is a manifestation of the symptoms."* (Emphasis added.) 8 H.R. Proc., Pt. 12, 1959 Sess., p. 5083. In other words, the statute in effect on the date of injury would apply even though the occupational disease was the result of exposure to the disease-causing agent during employment prior to 1959.

Second, even if Representative Satter's remarks were ambiguous, this court should not allow that ambiguity to justify the denial of workers' compensation benefits for an occupational disease that the decedent undeniably had contracted during his employment. Indeed, the majority must not be allowed to concede that the legislative history is "not a model of clarity," and in the next breath rely upon that very ambiguity to defeat the compensation claim of an injured worker and his widow. Such an interpretation of the legislative history does not comport with the remedial purposes of the Workers' Compensation Act that I identified in the first part of this dissent.

Finally, even if Representative Satter somehow had intended the connotation that the majority attributes

to him, that statement would not necessarily control the outcome of this case. We have recognized that some statements that appear in the legislative history are not controlling "because we recognize that legislative discussions may only be expressive of the views and motive of individual members and may not be a safe guide to views of the law making body." *Robinson* v. *Unemployment Security Board of Review*, 181 Conn. 1, 9, 434 A.2d 293 (1980). It seems incredible to me that, against a date of injury rule from which we have not wavered in more than seventy-five years, the majority should find the remarks of one legislator—which, from the viewpoint of the majority, are at best ambiguous—to be controlling.

### III

Finally, construing the workers' compensation laws to deny benefits to an employee whose occupational disease clearly is job related, but the symptoms of which do not manifest themselves until after the required notice period, is clearly anachronistic. Professor Larson makes this point in his treatise, in which he criticizes statutes that essentially require an employee to furnish notice of or file a claim before the employee even knows of the injury. "It is odd indeed to find, in a supposedly beneficent piece of legislation, the survival of this fragment of irrational cruelty surpassing the most technical forfeitures of legal statutes of limitation. Statutes of limitation generally proceed on the theory that a person forfeits his or her rights only when there is an inexcusable delay in the assertion of them, and any number of excuses will toll the running of the period. But here no amount of vigilance is of any help. The limitations period runs against a claim that has not yet matured; and when it matures, it is already barred. For good measure, the exclusive remedy provisions of the Compensation Act also abolish claimant's common

law remedies." 2B A. Larson, Workmen's Compensation (1994) § 78.42 (b), p. 15–299.[11]

## IV

On the basis of the beneficent purposes of the Workers' Compensation Act, our unwavering precedent, legislative history and plain logic, the date of injury rule must be applied to determine which period of notice or claim limitation applies to an employee's compensation claim. In spite of this longstanding and clear directive, however, the majority today creates a judicial exception that has the effect in this case of depriving a worker and his widow of compensation benefits because they failed to file a claim at a time when they could not have had any knowledge of the injury.

Accordingly, I respectfully disagree.

---

[11] Indeed, Professor Larson points out that such a limitation period may have constitutional implications: "There may well be a question of the validity of an enactment that destroys common law rights for personal injury and also destroys the supposed compensation substitute by an inherently insurmountable procedural bar." 2B A. Larson, supra, § 78.42 (e), pp. 15-302–304. This issue, however, was not raised by the parties in this case.