ORAZIO ROSSI *vs.* THE THOMAS F. JACKSON COMPANY ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 3d—decided November 5th, 1935.

*Michael V. Blansfield* and *William B. Hennessy,* for the appellant (plaintiff).

*Walter E. Monagan* and *Harold K. Watrous,* with whom, on the brief, was *Daniel G. Campion,* for the appellees (defendants).

HAINES, J. The claimant was continuously employed by the named defendant as a granite cutter from March 22d, 1921, to November 29th, 1924, when he left that employ and at intervals thereafter did work, other than stone cutting, for other parties. On December 8th, 1932, he became aware for the first time that he had pneumoconiosis. On December 13th, 1932, he gave the named defendant notice of a claim for compensation, and upon a hearing by the commissioner, was awarded $18 per week. Upon the defendants' appeal the Superior Court set aside the

award of the commissioner, but upon claimant's appeal to this court, we found error and remanded the cause for further action by the then Commissioner Lynch, who had succeeded Commissioner Williams, deceased. *Rossi* v. *Jackson Co.*, 117 Conn. 603, 169 Atl. 617.

The claimant again appeals to this court. The assignment of error upon which he places the most emphasis involves two questions: first, whether the claimant, as the commissioner held, was incapacitated on November 29th, 1924, when he left the named defendant's employ, and second, whether the notice of the claim for compensation given December 13th, 1932, was within the time prescribed by law so that claim for compensation could then be maintained.

The facts appearing in the finding may be stated as follows: The claimant was a man about sixty years of age who learned the business of stone-cutter in his native country, Italy; coming to this country in 1900, he worked at his trade in Maine, New Hampshire, Vermont and New York before coming to Waterbury where in March, 1921, he entered the employ of the named defendant and continued therein until November 29th, 1924, working on an average of six or seven months a year; the average weekly wage earned by the claimant while he was in the employ of the employer, was $36 a week. After he ceased that employ he earned between $20 and $25 a week on occasional jobs where he was employed, doing light work at intervals for other people, but he did no more work at his trade of stone-cutter.

In 1924 he consulted Dr. Graves and after informing him that his trade was that of stone-cutter, he was examined by the physician; his symptoms as manifested at that time indicated that he was suffering from some lung trouble, but Dr. Graves diagnosed

the trouble as bronchitis and asthma and advised him to give up his work of a stone-cutter as it was a source of danger to him. From the spring of 1925 to the fall of 1928 he frequently consulted Dr. Testa, an Italian physician with whom he could talk in the Italian language, and in the spring of 1929 he consulted Dr. Johnson; he was then acutely ill and in bed with a temperature of 102°; he had a pain in his chest with cough and expectoration; it was found he had a chronic inflammatory condition of his lungs; he had râles, raspy breathing and a history of a cough prior to infection. Dr. Testa, upon learning that he was a stone-cutter, advised him to keep away from any occupation where there was dust and he, too, diagnosed the trouble as acute bronchitis and asthma. In 1932 the claimant consulted Dr. Hennessey, a lung specialist, complaining of persistent cough with expectoration, slight loss of weight, loss of appetite and shortness of breath and stated that these symptoms had been present "the past few years." X-rays were used and Dr. Hennessey then diagnosed the trouble as pneumoconiosis.

The commissioner found that all of these enumerated symptoms are common to bronchitis and asthma and pneumoconiosis; further, that stone-cutters take free silica into the lungs from the beginning of their work and the condition of the lungs becomes worse while that occupation is continued; also that pneumoconiosis does not reach full development until after ten or fifteen years, and then becomes incurable. We must assume that these findings reflected the medical testimony which was before the commissioner. These facts would not have been materially strengthened for the benefit of the claimant if his motion for correction and rectification of the finding had been granted. The conclusion that the claimant had pneu-

moconiosis in 1924 is one the commissioner could reasonably reach in view of the conditions above recited, and in fact it would be difficult to believe that such was not the case. It was also reasonable for him to conclude that the earning capacity of the claimant was at least partially destroyed in 1924 when he left the employ of the named defendant, and this, therefore, must be held to be the time when he became entitled to compensation.

The further fact appears, however, that the claimant did not know he was suffering from the occupational disease of pneumoconiosis until 1932. During the period of ill health which is shown to have ensued after he left the employ of the named defendant, he consulted two physicians and each diagnosed his trouble as bronchitis and asthma, and it was not until December 8th, 1932, that the third physician, with the benefit of X-rays, discovered that he had pneumoconiosis.

A compensable injury having occurred in 1924, the respective rights and obligations of both parties to the contract of employment were fixed and determined by the statutory provisions in force at that time. It was then required by General Statutes, 1918, § 5360, that notice of claim for compensation must be given by the employee within one year from the "date of the injury," and we have held this term to mean the "date of the compensable injury" and not the date of the accident or occurrence from which the incapacity resulted, and that from the date of the accident to the end of the statutory waiting period following incapacity no matured right to compensation exists. *Esposito* v. *Martin-Rockwell Corporation*, 96 Conn. 414, 417, 114 Atl. 92. A right is only matured when a compensable injury has been followed by notice to the employer, given in conformity to the

statute. "The relation of the parties being contractual and the terms of the Compensation Act being incorporated into the contract of employment, the rights and obligations of the parties were defined by that act. 'The liability of an employer . . . was not fixed by the simple fact of injury to the employee arising out of and in the course of his employment,' but the element of notice and the time within which it must be given, 'entered into the very essence of the injured's party claim and the extent of it.' . . . The making of the claim and the time thereof are matters going to the maintenance of the right of action. . . . Where a statute gives a right of action which does not exist at common law, and fixes the time within which the right must be enforced, the time fixed is a limitation or condition attached to the right—it is a limitation of the liability itself as created, and not of the remedy alone. . . . Being a limitation upon the right of action it must be strictly complied with." *Walsh* v. *Waldron & Sons,* 112 Conn. 579, 583, 584, 153 Atl. 298; *Simmons* v. *Holcomb,* 98 Conn. 770, 774, 775, 120 Atl. 510; *Farmer* v. *Bieber-Goodman Corporation,* 118 Conn. 299, 172 Atl. 95. "The requirement of a written notice of claim for compensation is of the essence of the employee's right under the Act and a failure to comply with it cannot be waived or avoided upon equitable grounds." *Rehtarchik* v. *Hoyt-Messinger Corporation,* 118 Conn. 315, 319, 172 Atl. 353.

The appellant stresses the claim that this claimant was not obligated to give notice of claim for compensation within the year as required by General Statutes, 1918, § 5360, because he was not aware that he had suffered a compensable injury until 1932. It does not follow, as the claimant contends, that he could mature a right to compensation by giving the notice

after making the discovery. There was no provision in the statute (§ 5360) to protect the employee under such circumstances by extending the time for filing his claim, for a period of seven years after the one-year period fixed by the statute. As that statute stood the right of this claimant to give the notice expired one year after the waiting period following December 29th, 1924.

Claimant supports his claim by a citation of *Bremner* v. *Eidlitz & Son, Inc.*, 118 Conn. 666, 174 Atl. 172. That case unlike the present one was controlled by General Statutes, Rev. 1930, § 5245, which provided that the limitation of one year should run from "the date of the accident or from the first manifestation of a symptom of the occupational disease, as the case may be, which caused the personal injury," and we held that the word "manifestation" as there used was intended to refer to the time when the symptom plainly appeared and not when it was merely doubtful or uncertain, and that not only must the symptom itself plainly appear but it must be recognizable by the claimant himself as a reasonable man or by some one whose knowledge could be imputed to him, as a symptom of the occupational disease from which he was suffering. Under such an interpretation of that statute, a notice given more than one year from the date of the "accident" might suffice, provided it met a further limitation which appears in that statute to the effect that no claim because of an occupational disease could be made except the employee be still in the employ of the employer or "within three years after leaving such employ."

It seems clear that this statute was passed (Public Acts, 1927, Chap. 307, § 5) with the legislative purpose to ensure to an innocent employee the right to make his claim if he had been unaware of his right

to compensation which had arisen more than one year before, and for the protection of the employer by limiting this right in any event to a period of three years. Since these provisions only applied in cases which arose from and after their enactment, they furnish no aid to this employee. His rights had already expired under the old law, which was the one governing his contract of employment. *Farmer* v. *Bieber-Goodman Corporation,* supra, p. 302.

The finding and award by Commissioner Lynch was entered June 11th, 1934, and the claimant filed his appeal to the Superior Court June 18th, 1934; without having obtained an extension of time for doing so, the claimant filed his motion for correction of the finding with the commissioner on September 13th, 1934, although it appears from the record that the motion was dated June 20th, 1934. This motion referred to certain exhibits which were apparently a part of the evidence before the commissioner, but in his memorandum of decision upon the motion, the commissioner states that no such excerpts accompanied the motion and the record does not disclose that any were filed. The commissioner denied the motion stating that he did so because he did not believe he had the power under the circumstances to grant it. The rule then and now in force provides that a motion for correction of a finding of a compensation commissioner must be filed within two weeks after the appeal to the Superior Court is filed unless the time be otherwise fixed by rule or statute or is extended by the commissioner for cause. Practice Book, § 259.

The claimant's motion was not filed within the time prescribed, but the rule must be interpreted in the same way as are similar rules concerning appeals to this court in ordinary cases. We have held that ex-

tensions of time within which to file papers may be granted after the time fixed by the rules has expired. *General Hospital Society* v. *New Haven Rendering Co.*, 79 Conn. 581, 582, note, 65 Atl. 1065. A court may act upon a motion filed after the time fixed by the rule and so extend the time by implication. *Root* v. *Lathrop*, 81 Conn. 169, 170, 79 Atl. 614; *Elkin* v. *McGeorge*, 103 Conn. 486, 489, 130 Atl. 898; *Gross Bros. Sales Corporation* v. *Liebmann, Liebmann & Salant*, 103 Conn. 750, 753, 131 Atl. 593. The case of *Wilder* v. *Russell Library Co.*, 107 Conn. 56, 139 Atl. 644, goes no further than to hold that where a commissioner refuses to entertain a motion to correct a finding not properly filed, his action will be sustained by the courts. The commissioner was therefore in error in ruling that he did not have the power to entertain this claimant's motion, and such error might have been sufficient ground to remand the case. However, as we have already indicated, the changes which the claimant sought by his motion would not if granted have materially affected the claimant's rights, and the error of the commissioner does not require a remand of the case.

There is no error.

In this opinion the other judges concurred.