PETER DISCUILLO *v*. STONE AND WEBSTER ET AL.
(SC 15581)

Borden, Berdon, Norcott, Palmer and Peters, Js.

Argued April 30—officially released August 19, 1997

*Amy M. Stone*, with whom was *Carolyn P. Kelly*, for the appellant (plaintiff).

*Lucas D. Strunk*, for the appellee (named defendant).

*Opinion*

BORDEN, J. The dispositive issue in this certified appeal is whether, under the circumstances of this case, the limitation period within which the plaintiff was required to file his workers' compensation claim began to run before he actually was aware that the heart attack he had suffered was work-related.[1] The plaintiff, Peter Discuillo, appeals from the judgment of the Appellate Court affirming the decision of the compensation review board (board). The board had determined that the workers' compensation commissioner (commissioner) improperly had concluded that the plaintiff's notice of claim was timely filed. We conclude that the plaintiff's notice of claim was not timely filed and, accordingly, we affirm the judgment of the Appellate Court.

The relevant facts, as found by the commissioner, are set forth in the Appellate Court opinion. "Prior to November 12, 1982, the plaintiff was employed by the

---

[1] We granted the plaintiff's petition for certification to appeal limited to the following issue: "When does the statute of limitations begin to run in a workers' compensation case in which the plaintiff suffers a work-related heart attack but does not learn that the heart attack is work related until two years thereafter?" *Discuillo* v. *Stone & Webster*, 239 Conn. 953, 688 A.2d 325 (1996).

defendant, Stone and Webster,[2] as a painter. The plaintiff's responsibilities required him to climb ladders and to work on scaffolding while carrying five gallon buckets of paint and heavy pneumatic grinding equipment. While working, the plaintiff was constantly watched by job supervisors who pressured the plaintiff and his coworkers to get work done within certain time constraints. The plaintiff testified that he was in constant fear of losing his job because of his inability to keep up with the speed at which younger coworkers accomplished the same work.

"On November 12, 1982, the plaintiff sustained a heart attack after working the entire day on scaffolding using a heavy grinding machine. The plaintiff has not worked since that date. The plaintiff did not relate the heart attack to job stress until September, 1984, when he read in a newspaper about a similar case. On September 27, 1984, the plaintiff filed a notice of claim that identified his injury as the November 12, 1982 heart attack while in the defendant's employ. On October 22, 1984, the defendant filed a notice contesting the claim on the grounds that (1) the heart attack did not arise out of the employment and (2) the claim was barred by the (General Statutes [Rev. to 1981]) § 31-294[3] time limitations.

---

[2] The defendants in this case are Stone and Webster, Aetna Casualty and Surety Company and the second injury fund. For purposes of this appeal, we will refer to Stone and Webster as the defendant.

[3] At the time of the plaintiff's injury, General Statutes (Rev. to 1981) § 31-294 provided in relevant part: "No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident or within three years from the first manifestation of a symptom of the occupational disease, as the case may be, which caused the personal injury, provided, if death has resulted within two years from the date of the accident or first manifestation of a symptom of the occupational disease, a dependent or dependents, or the legal representative of the deceased employee, may make claim for compensation within the two-year period or within one year from the date of death, whichever is later. . . . For the purposes of this section, 'manifestation of a symptom' means its manifestation to an employee

"On December 13, 1993, the commissioner issued his findings and award. The commissioner found that the heart attack suffered by the plaintiff arose out of the course of his employment with the defendant and was caused by physical and mental stress while on the job, as well as arteriosclerotic heart disease. The commissioner also found that the plaintiff filed the notice of claim within one year of the date on which the plaintiff understood the causal relationship between the heart attack and the job stress. The commissioner concluded that the plaintiff's claim was not time barred under § 31-294.

"The board reversed the commissioner's decision and concluded that the plaintiff's claim is barred by § 31-294. The board held that a heart attack is an accidental injury and not an injury that is the direct result of repetitive trauma and that notice of claim for a heart attack must be filed within one year of the attack to be timely." *Discuillo* v. *Stone & Webster*, 43 Conn. App. 224, 225–26, 682 A.2d 145 (1996).

The Appellate Court, relying on its interpretation of our decision in *Crochiere* v. *Board of Education*, 227 Conn. 333, 630 A.2d 1027 (1993), affirmed the decision of the board. The Appellate Court concluded that, even if a heart attack was an injury that was the result of a repetitive trauma, as opposed to an accidental injury, the one year filing limitation of § 31-294 automatically applied to the former type of claim as well as to the latter. *Discuillo* v. *Stone & Webster*, supra, 43 Conn. App. 226. The Appellate Court further concluded that,

claiming compensation, or to some other person standing in such relation to him that the knowledge of such a person would be imputed to him, in such manner as is or ought to be recognized by him as symptomatic of the occupational disease for which compensation is claimed. . . ."

All references herein to § 31-294 are to the 1981 revision of the statute. The preceding language is presently codified, with minor technical changes, at General Statutes § 31-294c (a).

for a repetitive trauma claim, "the date of injury is either the last day of exposure to the work related incidents of repetitive trauma or the date of the accident." Id., 226–27. Accordingly, because "the plaintiff failed to file a notice of claim within one year from the last date of employment, which was the day he suffered the heart attack," his claim was, as the board had determined, time barred. Id., 227. This appeal followed.

The plaintiff's principal claim is that the Appellate Court improperly determined that the limitation period on his claim effectively began to run on the last day of his employment, rather than on the date that he became aware that his injury was work-related.[4] The defendant responds that the Appellate Court correctly held that repetitive trauma claims always must be filed within one year of the claimant's last day of exposure to the relevant stress, and that the claimant's date of awareness of the nature of his injury is irrelevant. We conclude that, even if the plaintiff's heart attack is properly classified as a repetitive trauma injury, rather than an accidental injury, the limitation period *in this case* began to run on the date of the plaintiff's heart attack, which was also his last day of work and therefore the last day on which he was exposed to the relevant work-related traumas. Accordingly, we affirm the judgment of the Appellate Court.

The workers' compensation scheme explicitly provides for three categories of compensable injury: (1) accidental injury; (2) repetitive trauma injury; and (3) occupational disease. See General Statutes (Rev. to

---

[4] See footnote 1 of this opinion for the certified question. Subsequent to certification, the plaintiff, pursuant to Practice Book § 4140, presented as an additional issue for review the adverse ruling of the board that his heart attack was an accidental injury as a matter of law. Given our conclusion on the certified issue that, even if the plaintiff's heart attack is properly classified as a repetitive trauma injury, he has failed to bring his compensation claim in a timely manner, we decline to address this issue.

1981) § 31-275 (8);[5] *McDonough* v. *Connecticut Bank & Trust Co.*, 204 Conn. 104, 109, 527 A.2d 664 (1987); *Grady* v. *St. Mary's Hospital*, 179 Conn. 662, 668, 427 A.2d 842 (1980). The mere fact that an injury is of a type that is compensable, however, does not of itself mean that the commissioner properly may consider a claim based on that injury. The notice and filing prerequisites of § 31-294, which are jurisdictional; *Rossi* v. *Jackson Co.*, 120 Conn. 456, 457, 181 A. 539 (1935); must also be satisfied. See, e.g., *Figueroa* v. *C & S Ball Bearing*, 237 Conn. 1, 4–5, 675 A.2d 845 (1997). The difficulty in the present case arises from the fact that, although § 31-294 specifically addresses the jurisdictional filing prerequisites that must be satisfied in order to bring an accidental injury or occupational disease claim, the statute is silent both as to the duration of the filing period for repetitive trauma claims and as to when that period begins to run.[6]

The plaintiff argues that, given this statutory silence, the "humanitarian purpose" of the workers' compensation system is best effectuated by judicial creation of

[5] At the time of the plaintiff's injury, General Statutes (Rev. to 1981) § 31-275 (8) provided: " 'Personal injury,' or 'injury,' as the same is used in this chapter, shall be construed to include, in addition to accidental injury which may be definitely located as to the time when and the place where the accident occurred, an injury to an employee which is causally connected with his employment and is the direct result of repetitive trauma or repetitive acts incident to such employment, and occupational disease as herein defined."

All references herein to § 31-275 (8) are to the 1981 revision of the statute. The preceding language is presently codified, with minor technical changes, at General Statutes § 31-275 (16) (A).

[6] See footnote 3 of this opinion for the text of § 31-294. This situation originated in 1947, when the legislature first expanded the list of compensable injuries to include repetitive trauma claims in addition to the preexisting categories of accidental injury and occupational disease. See Public Acts 1947, No. 191. The legislature failed, however, to create a corresponding limitation period for repetitive trauma claims to complement those that already existed for accidental and occupational injury claims. This statutory gap has remained unfilled to the present day.

a rule that the filing period for repetitive trauma claims as a class should not begin to run until the claimant is aware of the fact that the injury in question is work-related. He relies on the board's decision in *Boutin* v. *Industrial Components*, 4 Conn. Workers' Comp. Rev. Op. 19 (1987). In *Boutin,* the board specifically held that the limitation period for claims of repetitive trauma injury must be tolled until a claimant "knew or should have known" that a disabling condition arose from employment; id., 23; because it would be "offen[sive] to equity and logic" to hold that a claimant's remedy could expire before he or she was aware of the source of an injury. Id., 21.

The fundamental problem with the plaintiff's position is that it ignores the fact that the workers' compensation system in Connecticut is derived exclusively from statute. We have previously observed that the workers' compensation commission, like any administrative body, "must act strictly within its statutory authority . . . . It cannot modify, abridge, or otherwise change the statutory provisions under which it acquires authority unless the statutes expressly grant it that power." (Internal quotation marks omitted.) *Figueroa* v. *C & S Ball Bearing*, supra, 237 Conn. 4, citing *Castro* v. *Viera*, 207 Conn. 420, 428, 541 A.2d 1216 (1988). A commissioner may exercise jurisdiction to hear a claim only "under the precise circumstances and in the manner particularly prescribed by the enabling legislation." *Heiser* v. *Morgan Guaranty Trust Co.*, 150 Conn. 563, 565, 192 A.2d 44 (1963); see also *Kinney* v. *State*, 213 Conn. 54, 60, 566 A.2d 670 (1989). "[I]t is settled law that the commissioner's jurisdiction is confined by the [Workers' Compensation Act] and limited by its provisions." (Internal quotation marks omitted.) *Gagnon* v. *United Aircraft Corp.*, 159 Conn. 302, 305, 268 A.2d 660 (1970).

Accordingly, although we do not necessarily disagree with the plaintiff's analysis of the equities, we are not free to craft a limitation period for repetitive trauma claims in accordance therewith. "Even though the plaintiff has presented a factual record that warrants sympathetic consideration of [his] claims, [his] entitlement to relief cannot transcend the jurisdictional limits of the statute under which [he] seeks recovery." *Kinney* v. *State*, supra, 213 Conn. 58. Because of the statutory nature of our workers' compensation system, policy determinations as to what injuries are compensable and what jurisdictional limitations apply thereto are for the legislature, not the judiciary or the board, to make. Indeed, the board recognized this fact in the case of *Dorsey* v. *United Technologies Corp./Norden Systems*, 15 Conn. Workers' Comp. Rev. Op. 447, 452–53 (1996), wherein the board expressly acknowledged that its analysis in *Boutin* had been flawed and rescinded the rule established by that decision.

We therefore conclude that, for a commissioner to have jurisdiction over a claim, that claim must fit within the existing jurisdictional provisions of § 31-294. In other words, for purposes of jurisdiction, every cognizable claim must be considered as stemming from either an "accident" or an "occupational disease" as those terms are used in § 31-294.[7] We acknowledge, however, that § 31-275 (8), which includes repetitive trauma claims in the definition of compensable injury, evinces

[7] There is no legislative history that illuminates the reason, if any, that the drafters of No. 191 of the 1947 Public Acts did not create an explicit limitation period for the bringing of a repetitive trauma claim. Likewise, there is no indication of what those drafters intended the limitation period for a claim of repetitive trauma to be. In light, however, of the principle that the legislature is presumed to have intended to create a consistent body of law; *Cagiva North America, Inc.* v. *Schenk*, 239 Conn. 1, 8, 680 A.2d 964 (1996); it is reasonable to infer that the legislature intended that the then new repetitive trauma claims be folded into one of the preexisting jurisdictional categories. See footnote 6 of this opinion.

a definite legislative intent to allow compensation for that class of harm. In order to reconcile these competing mandates, we conclude that the terms "accident" and "occupational disease" as they are used in § 31-294 must be read broadly enough so that even an injury that is *defined* as stemming from repetitive trauma pursuant to § 31-275 (8) may nonetheless be deemed to fall into one of the two extant *jurisdictional* categories, as appropriate to the specific facts of each particular claim.[8] Applying this principle, we conclude that, even if we were to assume without deciding that the plaintiff's heart attack is by definition a repetitive trauma injury, his specific injury must nonetheless be deemed an "accident" for the jurisdictional purposes of § 31-294.

In this regard, we first note that the plaintiff's heart attack does *not* closely resemble an "occupational disease." The term "occupational disease" is specifically defined in § 31-275 (11) as including "any disease *peculiar to the occupation in which the employee was engaged* and due to causes in excess of the ordinary hazards of employment as such . . . ."[9] (Emphasis added.) "In interpreting the phrase 'occupational disease,' we have stated that 'the requirement that the disease be "peculiar to the occupation" and "in excess of the ordinary hazards of employment," refers to those

---

[8] Of course, one could theoretically argue that, because there is no explicit filing period for repetitive trauma claims in § 31-294, such claims may be filed at *any* time. The plaintiff does not, however, raise such an argument. In any event, we are not inclined to interpret our workers' compensation scheme to reach such a bizarre result. Cf. *Hall* v. *Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 302, 675 A.2d 1051 (1997).

[9] At the time of the plaintiff's injury, § 31-275 (11) provided: " 'Occupational disease' includes any disease peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such and includes any disease due to or attributable to exposure to or contact with any radioactive material by an employee in the course of his employment."

The preceding language is presently codified, with minor technical changes, at General Statutes § 31-275 (15).

diseases in which there is a causal connection between the duties of the employment and the disease contracted by the employee. In other words, [the disease] need not be unique to the occupation of the employee or to the work place; it need merely be "so distinctively associated with the employee's occupation that there is a direct causal connection between the duties of the employment and the disease contracted." ' *Hansen* v. *Gordon*, 221 Conn. 29, 35, 602 A.2d 560 (1992)." *Crochiere* v. *Board of Education*, supra, 227 Conn. 352–53.

In the present case, the workplace circumstances that allegedly caused the plaintiff's heart attack cannot be said to be "peculiar to" his occupation as a painter. The physical stresses he describes—having to lift, carry, and use heavy pieces of equipment—are present in many jobs involving manual labor. Likewise, the mental stress created by close supervision and productivity pressure is common throughout the working world. Neither type of stress is "distinctively associated with" the plaintiff's *particular occupation* as a painter. Thus, it cannot be said that the plaintiff's heart attack resulted from an occupational disease because his job and experiences as a painter were no more likely to cause his heart attack "than would other kinds of employment carried on under the same conditions." *Madeo* v. *I. Dibner & Bro., Inc.*, 121 Conn. 664, 667, 186 A. 616 (1936); see *Crochiere* v. *Board of Education*, supra, 227 Conn. 353 (music teacher could not claim mental injury as occupational disease where injury based upon false charges of sexual misconduct by student, because such allegations "could arise in numerous occupational settings"); *Hansen* v. *Gordon*, supra, 221 Conn. 37 (hepatitis was occupational disease where dental hygienist was "at a particular risk of contracting [hepatitis] because of [her] contact with blood and other secretions"); cf. *Zaleta* v. *Fairfield*, 38 Conn. App. 1, 7–8, 658 A.2d 166, cert. denied, 234 Conn. 917, 661 A.2d 98 (1995) (hyper-

tension not automatically deemed occupational disease of firefighters or police officers for workers' compensation purposes in absence of evidence of particular linkage between ailment and occupations).

In conjunction with our conclusion that the plaintiff's heart attack, even if stemming from repetitive trauma, does not resemble an occupational disease, we also conclude that the plaintiff's particular claim does resemble an accidental injury. Section 31-275 (8) does not define the term "accidental injury" specifically except to note that such an injury must "be definitely located as to the time when and the place where the accident occurred . . . ." See footnote 5 of this opinion. Although the plaintiff's injury is localizable as to time and place, we acknowledge that a stress-induced heart attack does not necessarily coincide with the everyday usage of the word "accident." Nonetheless, we do not think it is unreasonable to conclude that for the purposes of § 31-294, a series of repetitive workplace traumas can have the unintended result of causing an "accidental" injury to an employee. We thus conclude that labeling the plaintiff's heart attack as an accidental injury for jurisdictional purposes is appropriate under the facts of this case, because, of the two choices available under § 31-294, the plaintiff's heart attack more closely resembles an accidental injury than an occupational disease.[10]

---

[10] We emphasize that our characterization of the plaintiff's injury is based upon the specific facts of this particular case. We therefore disagree with the Appellate Court to the extent that it suggested that repetitive trauma injuries must *automatically* be treated as accidental injuries for purposes of § 31-294. *Discuillo* v. *Stone & Webster,* supra, 43 Conn. App. 226–27. We also disavow any implication that might be drawn from *Crochiere* v. *Board of Education,* supra, 227 Conn. 354, to that effect. We leave open, however, the question as to what factual predicate, if any, would support a conclusion that a repetitive trauma injury should be treated as an occupational disease for jurisdictional purposes. Likewise, we do not decide that all heart attacks derived from repetitive trauma must be considered accidental for purposes of § 31-294, but we leave open the question of what factual predicate, if any, would compel a different conclusion.

Our conclusion that the plaintiff's heart attack, even if it stems from repetitive trauma, must be treated as accidental for jurisdictional purposes is dispositive of the plaintiff's appeal. Because the plaintiff's injury is "accidental," he was required to comply strictly with all of the jurisdictional prerequisites for bringing that type of claim. In this regard, it is undisputed that the plaintiff did not seek compensation until nearly two years after the day of his heart attack. Section 31-294, however, provides that compensation claims based on accidental injury must be filed "within one year from the date of the accident . . . ." Moreover, with regard to repetitive trauma claims to which the limitation period for accidents applies, the date on which the "accident" is deemed to have occurred is the last day of exposure to the work-related incidents of repetitive trauma.[11] See, e.g., *Borent* v. *State*, 10 Conn. Workers' Comp. Rev. Op. 219, 220 (1992).

Furthermore, § 31-294 does not contain any provision for tolling the filing period for a claim of accidental

[11] We have adopted this general rule out of recognition that, in many cases involving repetitive trauma, the very nature of the injury will make it impossible to demarcate a specific date of injury. Thus, out of necessity, some other clear threshold had to be established as the start of the applicable limitation period. The last day of exposure to the relevant trauma is a logical choice, as the process of injury from a repetitive trauma is ongoing until that point. See, e.g., *Pich* v. *Pratt & Whitney*, 4 Conn. Workers' Comp. Rev. Op. 163, 164 (1988). We emphasize, however, that the fact that we properly may fill in the interstices of § 31-294 in order to give it practical effect does *not* mean that we may rewrite the statute fundamentally, as the plaintiff would have us do.

We also note that, although the last day of a claimant's exposure to a repetitive trauma often coincides with the last day of the claimant's employment; *Borent* v. *State*, 10 Conn. Workers' Comp. Rev. Op. 219, 220 (1992); the former is the sole germane date for calculating the limitation period on a claim. As the Appellate Court in *Discuillo* v. *Stone & Webster*, supra, 43 Conn. App. 225, implicitly recognized, our dicta in *Crochiere* v. *Board of Education*, supra, 227 Conn. 354, to the effect that the final date of a claimant's employment has independent significance, was an incorrect application of board precedent.

injury based on the claimant's lack of awareness of the work-related nature of that injury. The plaintiff relies on *Bremner* v. *Eidlitz & Son, Inc.*, 118 Conn. 666, 669–72, 174 A. 172 (1934), to support the proposition that the limitation period on his claim should not have begun to run before he had become aware of the nature of his injury. In *Bremner*, this court held that the limitation period *for an occupational disease claim* does not begin to run until the claimant knew or should have known that the disease is work-related. Id., 670. The court based its holding on its interpretation of General Statutes (1930 Rev.) § 5245, that the filing period in occupational disease cases was to be computed from the date of " 'the first manifestation of a symptom . . . .' " Id., 669. Indeed, § 31-294 not only contains this same language, but also explicitly incorporates the court's interpretation of that phrase in *Bremner*. See footnote 3 of this opinion.

Neither § 31-294 nor any antecedent statute, however, has ever contained any language so tolling the running of the limitation period for a claim based on accidental injury. Indeed, our precedent explicitly holds that, given the absence of such language, the limitation period for a claim based on accidental injury is *not* tolled simply because the claimant is unaware that he or she has suffered a compensable injury. In *Gavigan* v. *Visiting Nurses Assn.*, 125 Conn. 290, 4 A.2d 923 (1939), the plaintiff suffered a fall at work in 1933, but she did not visit a doctor until 1938, when she experienced severe back pain. Id., 291. The plaintiff was then informed that her fall five years earlier had fractured her coccyx. The plaintiff presented a compensation claim shortly thereafter. Id. This court held that the commissioner properly refused to consider the plaintiff's claim. Id., 293. The applicable jurisdictional statute at the time provided, as it does now; see footnote 3 of this opinion; that claims of accidental injury had to be filed "within

one year from the date of the accident . . . ." General Statutes (Cum. Sup. 1937) § 799d. We held that this language, when compared with the "manifestation" language applicable to occupational disease claims, demonstrated a clear legislative intent that the plaintiff had to file her claim within one year of the date of the accidental occurrence, and not of the date she realized that she had suffered a compensable injury, for her claim to be timely. *Gavigan* v. *Visiting Nurses Assn.*, supra, 292.

Because the legislature has not acted to change the *Gavigan* rule in the fifty years since that case was decided, we presume that the legislature acquiesces in our interpretation. See *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, 236 Conn. 681, 693–94, 674 A.2d 1300 (1996). Accordingly, our conclusion that the plaintiff's injury in the present case is accidental for purposes of § 31-294 compels the conclusion that the limitation period on his claim began to run on the date of his heart attack, even though he was unaware that his injury was work-related.

In the present case, the plaintiff never returned to work after his heart attack. Consequently, the date of his heart attack is also his last date of exposure to the relevant stresses. Because the plaintiff did not file his claim within one year of that date, we conclude that the commissioner in this case improperly exercised jurisdiction over the plaintiff's claim.

The judgment of the Appellate Court is affirmed.

In this opinion NORCOTT, PALMER and PETERS, Js., concurred.

BERDON, J., dissenting. This case raises a pivotal issue under Connecticut's workers' compensation law with respect to the limitation period within which an employee must file his or her claim for a work-related

injury caused by "repetitive trauma"—in this case, the injury was a heart attack.

There are three classes of compensable injuries under our workers' compensation law: (1) accidental injury; (2) occupational disease; and (3) repetitive trauma injury. General Statutes (Rev. to 1981) § 31-275.[1] The first two categories have explicit statutory time limitation periods within which an employee must file a notice of claim (notice) with his or her employer or any workers' compensation commissioner, while the third category—injury based upon repetitive trauma—has no specified statutory limitations period. General Statutes (Rev. to 1981) § 31-294.[2] Although there is a statutory

---

[1] General Statutes (Rev. to 1981) § 31-275, the statute in effect at the time of the plaintiff's injury, sets forth the three categories of compensable injuries and provides in relevant part: "(8) 'Personal injury,' or 'injury,' as the same is used in this chapter, shall be construed to include, in addition to accidental injury which may be definitely located as to the time when and the place where the accident occurred, an injury to an employee which is *causally connected with his employment* and is the direct result of *repetitive trauma* or *repetitive acts* incident to such employment, and occupational disease as herein defined. . . ."

"(11) 'Occupational disease' includes any disease peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such and includes any disease due to or attributable to exposure to or contact with any radioactive material by an employee in the course of his employment. . . ." (Emphasis added.)

[2] At the time of the plaintiff's injury, General Statutes (Rev. to 1981) § 31-294 provided in relevant part: "No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation *is given within one year from the date of the accident or within three years from the first manifestation of a symptom of the occupational disease*, as the case may be, which caused the personal injury, provided, if death has resulted within two years from the date of the accident or first manifestation of a symptom of the occupational disease, a dependent or dependents, or the legal representative of the deceased employee, may make claim for compensation within such two-year period or within one year from the date of death, whichever is later. Such notice may be given to the employer or the commissioner . . . . For the purposes of this section, 'manifestation of a symptom' means its manifestation to the employee claiming compensation, or to some other person standing in such relation to him that the knowledge of such a person would be imputed to him, in such manner as is or ought to be recognized by him as symptomatic

gap in § 31-294,[3] the majority would have us believe that the legislature intended that the time within which notice is required to be given by an employee would have expired before the injured employee was actually aware that his or her repetitive trauma injury was work-related. I do not believe that the legislature intended such a draconian result.

The majority recognizes that the legislature clearly intended that repetitive trauma injury be recognized as a third category of compensable injury; General Statutes (Rev. to 1981) § 31-275 (8); but then concludes through judicial fiat that it will not foster this independent recognition. Rather, the court today decides for the first time "that the terms 'accident' and 'occupational disease' as they are used in § 31-294 must be read broadly enough so that even an injury that is defined as stemming from repetitive trauma pursuant to § 31-275 (8) may nonetheless be deemed to fall into one of the two extant jurisdictional categories [for the purpose of applying a limitation period], as appropriate to the specific facts of each particular claim." The conclusion that a case specific determination must be made will undoubtedly create additional litigation and it will also have a devastating impact on injured employees because of uncertainty in the law and the resulting increase in litigation costs. I disagree with the majority's analysis and its conclusion.

In this case, the majority imposes a one year limitation for the plaintiff's repetitive trauma claim because

of the occupational disease for which compensation is claimed. . . ." (Emphasis added.)

The present version of the statute is codified at General Statutes § 31-294c.

[3] In 1947, when the legislature amended the statute in effect at that time to include repetitive trauma injuries as a third class of compensable injury, to be added to the already existing accidental injury and occupational disease claims; Public Acts 1947, No. 191; it apparently neglected to include a time limitation for repetitive trauma claims. See footnote 7 of the majority opinion. To this day, the legislature has not corrected this statutory gap.

it concludes "that the plaintiff's heart attack does *not* closely resemble an 'occupational disease,' " and, therefore, the majority holds that it must be classified as an accidental injury for the purpose of applying a limitation period. (Emphasis in original.) Because the plaintiff's heart attack occurred on November 12, 1982, and written notice of his claim was not filed until September 27, 1984, the majority concludes that the plaintiff's claim is time barred.

In my view, a repetitive trauma injury has its own legislative identity and cannot be merged into the classification of an accidental injury or an occupational disease, as the majority attempts to do. I conclude, for the reasons set forth herein, that the notice for a repetitive trauma injury must be filed within one year from the date of the employee's last exposure to the work-related repetitive trauma, or the last day worked, whichever is later, but that the limitation period is subject to a "discovery" rule. The discovery rule tolls the time by which notice of the injury must be filed until the employee discovers, or should have discovered through the exercise of reasonable care, that he or she has been injured and that the injury is causally connected to his or her employment.

The following relevant facts in this case are not in dispute. Prior to November 12, 1982, the plaintiff was employed as a painter by the named defendant, Stone and Webster (defendant).[4] The plaintiff's job responsibilities required him to climb ladders and to work on scaffolding while carrying five gallon buckets of paint, heavy pneumatic grinding equipment and heavy rubber air hoses. He was required to carry this paint and equipment up the ladders in order to grind and paint beams

---

[4] In addition to the named defendant, there are other defendants in this case. See footnote 2 of the majority opinion. References herein to the defendant are to Stone and Webster.

that had been welded together. On some work days the plaintiff had to climb up and down the ladders twenty-five times. While working, the plaintiff was constantly watched by supervisory personnel wearing "white hats" who pressured the plaintiff and his coworkers to get work done quickly. The plaintiff was in constant fear of losing his job because he initially had failed the spray test that he was required to pass in order to keep his job and because of his inability to keep up with the speed at which younger coworkers accomplished the same work. A coworker corroborated the plaintiff's account of the job responsibilities and work conditions.

On November 12, 1982, before the work day was over, the plaintiff began to experience chest pains as he was cleaning his equipment. When he walked to his car to drive home, the chest pains became worse and he sat in his car and waited for them to subside. The next morning he was taken to Lawrence Memorial Hospital in New London and was treated for a heart attack by Robert Linden, an internist. Linden's discharge summary noted that the plaintiff had the risk factors for a heart attack because of smoking and a family history of heart disease. The doctor's records did not indicate that the plaintiff suffered from stress on the job.

The plaintiff testified that he did not relate his heart attack to job stress until September, 1984, approximately two years after the heart attack, when he read a newspaper story depicting a person who had suffered a heart attack that resulted from job stress. Consequently, on September 27, 1984, the plaintiff filed a notice of claim that identified his November 12, 1982 heart attack as resulting from his employment with the defendant. The plaintiff was subsequently examined by Martin J. Frank, a board certified cardiologist, and he confirmed that physical and emotional stress on the job was a significant and precipitating factor causing the plaintiff's heart attack. The defendant filed with the

workers' compensation commissioner (commissioner) a notice contesting the claim on two grounds: (1) the heart attack did not arise out of the employment with the defendant; and (2) the claim was not timely because notice was not filed within the time limitation of § 31-294.

The commissioner hearing this case found that the heart attack suffered by the plaintiff was caused by physical and emotional job stress, as well as arteriosclerotic heart disease. The commissioner also concluded that the plaintiff's claim was not time barred under § 31-294 because he found that the plaintiff had filed his notice of claim within one year of the date on which the plaintiff *understood that there was a causal relationship* between his heart attack and his work-related stress. The compensation review board (review board) concluded that the plaintiff's claim was untimely and it reversed the commissioner and dismissed the case. The plaintiff appealed to the Appellate Court, which affirmed the decision of the review board. *Discuillo* v. *Stone & Webster*, 43 Conn. App. 224, 227, 682 A.2d 145 (1996). This appeal followed.

I

Although the majority does not reach the issue, I first resolve that the injury in this case—the plaintiff's heart attack—was caused by work-related repetitive trauma. "Our standard of review of the [review] board's determination is clear. [T]he [review board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. Although the [review board] may take additional material evidence, this is proper only if it is shown to its satisfaction that good reasons exist as to why the evidence was not presented to the commissioner. Otherwise, it is obliged to hear the appeal on the record and not retry the facts. . . . [T]he power and duty of *determining the facts* rests on the *commissioner, the*

*trier of facts. . . .* The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Emphasis added; internal quotation marks omitted.) *Williams* v. *Best Cleaners, Inc.*, 237 Conn. 490, 500–501, 677 A.2d 1356 (1996).

The commissioner's finding in the present case that the plaintiff's injury was primarily the result of repetitive trauma is consistent with the evidence in the record. There was no evidence indicating that on the date of the heart attack the plaintiff was subjected to any unusual excitement or overexertion, or that he was involved in an "accident." More importantly, the commissioner found that Frank, the plaintiff's cardiologist, "was of the opinion that the job stress [that the plaintiff] experienced was a significant factor in the cause of the [heart attack]" and "that [the plaintiff] had an ongoing cardiac disease prior to November 12, 1982, but that the stress of work probably was the precipitating factor causing [the plaintiff's heart attack]." The commissioner indicated that "[t]he doctor described the stress as both physical and emotional. He believed that the combination of long hours of holding a grinding machine while working on a scaffold coupled with the mental pressure of supervisors produced the stress that precipitated the [heart attack]." The commissioner credited this medical opinion, and discounted the opinion of Linden, the plaintiff's treating physician at the time of the heart attack. The commissioner's finding that the work-related repetitive trauma was a significant and precipitating factor causing the plaintiff's heart attack must stand.

II

The majority concludes that "even if the plaintiff's heart attack is properly classified as a repetitive trauma

injury, rather than an accidental injury, the limitation period *in this case* began to run on the date of the plaintiff's heart attack, which was also his last day of work and therefore the last day on which he was exposed to the relevant work-related traumas." (Emphasis in original.) This conclusion is reached under the majority's *unusual* theory that the determination of the period within which the employee must file his or her notice, for an injury caused by repetitive trauma, is dependent upon whether the injury can be classified, for jurisdictional purposes, as either an accidental injury or an occupational disease. The majority then concludes that the plaintiff's heart attack must be classified as an accidental injury. The majority's reasoning is contrary to the statutory framework of the Workers' Compensation Act (act); General Statutes § 31-275 et seq.; clearly established precedent and reason.

The majority's conclusion that a repetitive trauma injury could be classified as an accidental injury for the purpose of determining when the employee must give notice is contrary to the statutory definition of an accidental injury. An accidental injury is clearly defined as an injury "definitely located as to the time when and the place where the accident occurred . . . ." General Statutes (Rev. to 1981) § 31-275 (8); see also *Linnane* v. *Aetna Brewing Co.*, 91 Conn. 158, 162, 99 A. 507 (1916) ("An accidental bodily injury may . . . be defined as a localized abnormal condition of the living body directly and contemporaneously caused by accident; and an accident may be defined as an unlooked-for mishap or an untoward event or condition not expected. *The concurrence of accident and injury is a condition precedent to the right to compensation.*" [Emphasis added.]); *Keegan* v. *Aetna Life & Casualty Ins. Co.*, 42 Conn. App. 803, 808, 682 A.2d 132, cert. denied, 239 Conn. 942, 686 A.2d 120 (1996) (stating, with respect to an accidental injury, that "the employee knows the

precise moment that his injury occurred, *as well as its cause*" [emphasis added]). Because a repetitive trauma injury occurs over a long period of time, and not necessarily in the same location, it is the antithesis of the statutory definition of an accidental injury.

Although I do not agree with the majority's analysis or its conclusion, I agree that there is a one year limitation period for repetitive trauma claims. We made that abundantly clear in *Crochiere* v. *Board of Education*, 227 Conn. 333, 348, 630 A.2d 1027 (1993). But that one year period is measured, in the first instance, from "the last day of exposure to the work-related incidents of repetitive trauma, or the last day worked, whichever is later." Id., 354.[5] In *Crochiere*, however, we never discussed the discovery rule, which is deeply embedded in the limitation period for repetitive trauma claims, because the employee in that case made his claim within one year from the date that his employment terminated. See id.

As previously noted, the limitations period for repetitive trauma claims is subject to a discovery rule—that is, the one year period is tolled until the employee discovers, or should have discovered through the exercise of reasonable care, that he or she has been injured and that the injury is causally connected to his or her employment. The review board has held so for a period spanning the last ten years. See, e.g., *O'Leary* v. *New Britain*, 3 Conn. Workers' Comp. Rev. Op. 108, 110 (1986); *Boutin* v. *Industrial Components*, 4 Conn. Workers' Comp. Rev. Op. 19, 23 (1987); *Dorsett* v. *General Dynamics Corp.*, 8 Conn. Workers' Comp. Rev. Op. 77, 79, aff'd, 23 Conn. App. 827, 584 A.2d 484 (1990) (per curiam), cert. denied, 218 Conn. 901, 588 A.2d 1076 (1991); *Edmounds* v. *Machlett Laboratories*, 9 Conn.

---

[5] The rule in *Crochiere* was based upon the precedent from several cases of the review board. *Crochiere* v. *Board of Education*, supra, 227 Conn. 353–54.

Workers' Comp. Rev. Op. 241, 242 (1991); *Santry* v. *Fermont Division, D.C.A.*, 13 Conn. Workers' Comp. Rev. Op. 230, 232 (1995); *Smith* v. *Aetna Life & Casualty*, 14 Conn. Workers' Comp. Rev. Op. 336, 338 (1995).

In *Boutin*, a case involving an employee who suffered from carpal tunnel syndrome because of work-related repetitive trauma, the review board reversed the ruling of the commissioner below. The commissioner who conducted the hearing ruled that the employee's claim was time barred because she had not sent a notice of claim to her employer within one year of the 1980 surgery on her arm, the time by which notice must be sent in accidental injury cases. In *Boutin*, the employee's neurosurgeon, approximately one year after surgery on her right arm, "informed the claimant for the first time that the carpal tunnel condition in both arms was due to her work." *Boutin* v. *Industrial Components*, supra, 4 Conn. Workers' Comp. Rev. Op. 20. The employee filed a claim within weeks after being informed of this connection to her work. Id. The then chairperson of the workers' compensation commission, John Arcudi, wrote in *Boutin* that "[w]e would need to hold that [the] claimant's remedy expired before she could know that she was injured in order to affirm the ruling below. Such a determination offends equity and logic." Id., 21. Consequently, Arcudi articulated a logical rule: "[T]he limitation period [for repetitive trauma injuries] is not triggered until the employee knew or should have known that he has a disabling condition arising from the employment." Id., 23. *Boutin* points out that this rule of law is consistent with the development of workers' compensation law in Connecticut, and relies on this court's reasoning in *Bremner* v. *Marc Eidlitz & Son, Inc.*, 118 Conn. 666, 174 A. 172 (1934).[6] Although

[6] In *Bremner*, this court held, relying on the " 'first manifestation of a symptom of the occupational disease' " language in the statute in effect at that time, that the statutory limitation period for an occupational disease claim does not begin to run until the employee knew or should have known

*Bremner* was a case dealing with an occupational disease and the court was relying on express language in the statute with respect to such claims, repetitive trauma cases share a common thread with occupational disease cases—the work-related nature of the injury cannot be, in the words of § 31-275 (8), "definitely located as to the time when and the place where the accident occurred" and, as such, there is no accident, in most instances, to trigger awareness of having sustained a work-related injury.

The discovery rule adopted by the review board should control based upon several tenets of statutory construction. "We accord great deference to the construction given to § 31-294 by the commissioner and the review [board] because they are both charged with its enforcement." *Crochiere* v. *Board of Education*, supra, 227 Conn. 354, citing *Police Dept.* v. *State Board of Labor Relations*, 225 Conn. 297, 300, 622 A.2d 1005 (1993) ("[o]ur review of an agency's decision on questions of law is limited by the traditional deference that we have accorded to that agency's interpretation of the acts it is charged with enforcing"); *Board of Education* v. *State Board of Labor Relations*, 217 Conn. 110, 120, 584 A.2d 1172 (1991) ("[t]he agency's practical construc-

that the disease is work-related. *Bremner* v. *Marc Eidlitz & Son, Inc.*, supra, 118 Conn. 669–72. Specifically, the court stated: "No doubt the legislature used the word manifestation with something of this significance, intending that the duty of giving notice, and the risk that an employee might forfeit compensation for an occupational disease, should arise only when a symptom of that disease should plainly appear, not when it was merely suspected or doubtful." Id., 669–70. At the time of the *Bremner* decision, occupational disease claims had to be brought within one year "from the first manifestation of a symptom of the occupational disease . . . provided no claim . . . shall be made by an employee or his dependents . . . except while the employee is still in such employ or within three years after leaving such employ . . . ." General Statutes (1930 Rev.) § 5245. The three year cap was later increased to five years. See General Statutes (1939 Sup.) § 1330e. That cap was eventually eliminated altogether. See footnote 9 and the accompanying text of this dissent.

tion of [a] statute, if reasonable, is high evidence of what the law is" [internal quotation marks omitted]). In the present case, because the review board's long-standing construction of the statute was reasonable, it should control. This is especially true here because "the legislature is presumed to know all the existing statutes, the judicial interpretation of them, and the effect that its action or nonaction will have on them." *Mack* v. *Saars*, 150 Conn. 290, 298, 188 A.2d 863 (1963). Furthermore, § 31-294, currently codified at General Statutes § 31-294c, has been amended at least four times since the *Boutin* decision in 1987, and the legislature has chosen not to respond to that decision and its progeny. Legislative concurrence is particularly strong "where the legislature makes unrelated amendments in the same statute." *Connecticut Light & Power Co.* v. *Public Utilities Control Authority*, 176 Conn. 191, 198, 405 A.2d 638 (1978).

I recognize that in September, 1996, a majority of the review board reversed its long-standing discovery rule for repetitive trauma claims by overruling *Boutin.* See *Dorsey* v. *United Technologies Corp./Norden Systems*, 15 Conn. Workers' Comp. Rev. Op. 447, 450 (1996). In *Dorsey*, however, chairperson Jesse M. Frankl dissented with respect to the reversal of the rule set forth in *Boutin.*[7] In his dissent, Frankl not only noted that the *Boutin* decision had been repeatedly followed by the review board, but he also noted that "[t]he doctrine

---

[7] Although Frankl wrote the decision of the review board that dismissed the plaintiff's claim in this case as untimely, the review board's decision did not disavow the discovery rule for repetitive trauma claims, but, rather, it improperly concluded, as a matter of law, that all heart attacks are caused by an accidental injury and not by repetitive trauma. I do not dispute that under the facts of any given case a heart attack could be caused by an accidental injury, but it depends on the facts of the case and it is for the commissioner to make those findings of fact. The commissioner in this case determined that the plaintiff's heart attack was caused by repetitive trauma. See part I of this dissent.

that the statute of limitations runs from the date of a known manifestation is the *workers' compensation analogue to the discovery rule for the running of the statute of limitations in tort actions. . . .* The discovery doctrine developed in tort actions to delay the running of the statute of limitations where the connection between a defendant's conduct and the actionable injury does not become obvious until some time after the conduct complained of has occurred." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 452. For support, Frankl cited *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 521, 562 A.2d 1100 (1989), which reiterates the common-law discovery rule in civil cases. In *Champagne*, this court stated that "[i]n Connecticut, a cause of action accrues when a plaintiff suffers actionable harm. . . . Actionable harm occurs when the plaintiff discovers or should discover, through the exercise of reasonable care, that he or she has been injured *and that the defendant's conduct caused such injury.*" (Citation omitted; emphasis added.) Id. Applying the "discovery rule" from civil cases to repetitive trauma claims makes eminent sense because it ensures that the injured employee will not be barred from bringing his or her claim before he or she has discovered, or should have discovered, that the injury is work-related.[8]

As indicated by the dissent in *Dorsey*, it is not that much of a leap to apply the legislative policy underlying

[8] The majority cites to *Gavigan* v. *Visiting Nurses Assn.*, 125 Conn. 290, 292, 4 A.2d 923 (1939), for the proposition that "our precedent explicitly holds that, given the absence of [tolling] language [in § 31-294], the limitations period for a claim based upon accidental injury is not tolled simply because the claimant is unaware that he or she has suffered a compensable injury." This precedent, however, is binding only with respect to an *accidental injury*, as occurred in that case, and does not speak to the elusive and complex nature of repetitive trauma injuries, a category of injury more similar to occupational diseases. Indeed, repetitive trauma claims were not statutorily recognized until 1947. See Public Acts 1947, No. 191.

the discovery rule that already exists in the statute for occupational disease cases to repetitive trauma cases. Indeed, in 1959, the legislature amended the statute with respect to the limitation period in occupational disease cases. Public Acts 1959, No. 580, § 8. The dissent in *Dorsey* noted that "[t]he legislative history regarding changes to the statute of limitations for workers' compensation injuries reveals that the legislature was concerned with legitimate claims which had been barred due to the late filing of notice where the claimant's symptoms did not appear until after the notice period had expired. Thus, the legislature in 1959 deleted a provision in the statute of limitations which required notice of an occupational disease claim to be filed no later than five years after the claimant left his employment.[9] One senator made the following remarks . . . '[T]he bill changes the statute of limitations to prevent people from being barred from obtaining benefits because they discovered their condition too late to be able to make a claim. It provides that the present five year [statute] be eliminated. That statute prevented workers from making claim[s] for benefits after they had been out of the employ of the employer [for] more . . . than the five years. . . . [The five year period] might prevent claims for . . . other diseases, the manifestations of which [may arise] some years after exposure.' [8 S. Proc., Pt. 6, 1959 Sess., p. 2816, remarks of Senator Norman A. Buzaid]. Moreover, Representative [Robert] Satter stated: 'I would say that this law consistently provides that any manifestations of an injury which occurs sometime later is nevertheless compensa-

---

[9] At that time, the limitation period for occupational disease claims was codified at General Statutes (1958 Rev.) § 31-168, which provides in relevant part that such claims had to be brought "within one year from . . . the first manifestation of a symptom of the occupational disease . . . provided no claim . . . shall be made by an employee or his dependents . . . except while the employee is still in such employ, or within five years after his leaving such employ. . . ."

ble even if [it] is after the [one year] statute of limitations.' 8 H.R. Proc., Pt. 12, 1959 Sess., p. 5082 . . . . It appears from the legislative history that the legislature was concerned with protecting legitimate claims where the manifestation of a known symptom did not occur until after the [five] year time limit had expired. This concern is compatible with the holding in *Boutin* that a claim for repetitive trauma may be timely if it is filed within one year after the claimant 'knew or should have known that he has a disabling condition arising from the employment.' [*Boutin* v. *Industrial Components*, supra, 4 Conn. Workers' Comp. Rev. Op. 23]." *Dorsey* v. *United Technologies Corp./Norden Systems*, supra, 15 Conn. Workers' Comp. Rev. Op. 452–53 (Frankl, Chairperson, dissenting).

The previously long-standing rule applied in the *Boutin* decision, and as argued for in the dissent in *Dorsey*, is in line with the liberal thrust of the workers' compensation law in this state. Indeed, in *Muldoon* v. *Homestead Insulation Co.*, 231 Conn. 469, 483, 650 A.2d 1240 (1994), this court recently reaffirmed that the act is to be liberally construed—and that case included the four justices who comprise the majority on this panel. That is a construction that we have consistently applied over the years. See, e.g., *Dubois* v. *General Dynamics Corp.*, 222 Conn. 62, 67, 607 A.2d 431 (1992) ("[w]e have also stated that [w]e are mindful of the principles underlying Connecticut practice in [workers'] compensation cases: that the legislation is remedial in nature . . . and that it should be broadly construed to accomplish its humanitarian purpose" [citation omitted; internal quotation marks omitted]); *Massolini* v. *Driscoll*, 114 Conn. 546, 553, 159 A. 480 (1932) ("[t]he [a]ct is to be construed with sufficient liberality to carry into effect the beneficent purpose contemplated in that legislation, and not to defeat that purpose by narrow and technical definition").

In sum, the repetitive trauma injury is a first cousin to the occupational disease injury and it is reasonable that the same discovery rule be applied. The plaintiff put it quite well in his brief to this court: "Like occupational diseases, repetitive trauma injuries develop insidiously and incrementally until they suddenly become manifest. Like occupational disease cases, in repetitive trauma cases, medical expert opinion is needed to establish both the injury itself and the causal relationship between the employment and the injury. For these reasons, common sense dictates that the statute of limitations must run from the date of awareness in cases in which the exposure to the trauma ends before the plaintiff learns that his injury is work-related."

The logic of the majority, however, eludes me. The majority stresses that "the workers' compensation system in Connecticut is derived exclusively from statute" and, therefore, the court is unable "to craft a limitation period for repetitive trauma claims . . . ." Having said this, the majority does *exactly* what it claims cannot be done by in fact crafting a limitation period. The problem with this crafted limitation period is that it is uncertain and it could expire before the employee has knowledge that he or she has in fact been injured by repetitive trauma. Finally, adopting the purest position of the majority, namely, that the act is exclusively statutory, would require that this court conclude that there is in fact *no limitation period* for repetitive trauma injuries because no time limitation is specifically provided for by statute.

It is axiomatic that the workers' compensation law provides an employee with the exclusive remedy for his or her work-related injuries, but the majority's result deprives the plaintiff of this remedy for his heart attack that was caused by work-related repetitive trauma. The majority rigidly applies a time limitation applicable to accidental injuries when the statute is silent with

respect to a time limitation for repetitive trauma claims. The logical and reasonable construction that the review board originally placed on the statute should prevail, especially when the legislature is presumed to have acquiesced in that construction.

Accordingly, I dissent.